**CANA INVESTMENTS, LLC, Appellant,**

v.

**Toby J. FANSLER, Jr., Universal Faith Society and National City Home Loan Services, Inc., Appellees.**

**No. 27A02–0411–CV–959.**

Court of Appeals of Indiana.

Aug. 17, 2005.

Jon L. Orlosky, Muncie, for Appellant.

Craig D. Doyle, Joanne B. Friedmeyer, James L. Shoemaker, Doyle & Friedmeyer, Indianapolis, for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

CANA Investments, LLC ("CANA") appeals from the trial court's award of a tax sale surplus to National City Loan Services, Inc. ("National City"). National City owned a judgment lien against the real estate titled in CANA when the tax sale deed was executed. The sole issue on appeal is whether National City's claim to the tax sale surplus as the lienholder has priority over CANA's claim as the owner.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On September 5, 2002, a Default Judgment of Foreclosure was entered in favor of National City against Toby J. Fansler, Jr. and Avco Financial Services of Indianapolis, Inc., foreclosing Fansler's mortgage that was secured by real estate located at 3096 South Lincoln Boulevard in Marion ("the real estate") under Cause Number 27D01–0203–MF–110. National City was granted judgment against Fansler in the amount of $36,529.73 plus interest, costs, and attorney's fees. The real estate subsequently became subject to a tax sale in a proceeding under Cause Number 27D01–0210–MI–442. That matter was later transferred to Cause Number 27D02–0403–MI–53, the case currently on appeal.

At a tax sale on October 29, 2002, Lennox Group purchased the real estate for $7,000.[1] The surplus from the sale after the payment of Fansler's delinquent taxes was $6,289.14. On November 25, 2003, Fansler executed a Tax Sale Disclosure in favor of CANA, and, on that same date, CANA recorded a quitclaim deed from Fansler to the real estate. On January 24, 2004, the trial court entered an order directing the Grant County Auditor to execute a tax deed.[2]

Sometime before January 27, 2004, National City filed a motion to intervene in the tax sale proceedings, and the trial

---

1. The tax sale certificate was ultimately assigned to Universal Faith Society.

2. When or whether the tax deed was issued cannot be verified on the CCS. Paragraph 2 in CANA's Petition to Release Tax Sale Surplus provides that the tax deed was issued on or about December 29, 2003. Per National City's Petition to Release Tax Sale Surplus, the trial court ordered the Auditor to issue a tax deed on or about December 29, 2003. Presumably the tax deed was issued to Universal Faith Society, but the record is not clear on that point.

court granted that motion. On January 27, 2004, the trial court ordered the Grant County Auditor to hold the tax sale surplus funds until further order. On March, 30, 2004, National City filed a Petition for Release of Tax Sale Surplus, and CANA filed a Petition for Release of Tax Sale Surplus on July 23, 2004. On September 1, 2004, the trial court entered its order granting National City's petition and directing the Grant County Auditor to release the tax sale surplus funds to National City. Thereafter, on September 30, 2004, CANA filed a Motion to Correct Error, which the trial court denied. This appeal ensued.

## DISCUSSION AND DECISION

### Tax Sale Surplus Claim under Indiana Code Section 6–1.1–24–7

CANA asserts that under Indiana Code Section 6–1.1–24–7, as amended effective July 1, 2001, only the owner of real property who is divested of ownership by the execution of a tax deed may make a claim for surplus tax sale funds. Specifically, CANA claims that Indiana Code Section 6–1.1–24–7(b) bars National City from making a claim for the tax sale surplus because National City was not the owner of the real estate at the time the tax deed was executed. In effect, CANA contends that the procedure set forth in Section 6–1.1–24–7 is the only avenue for claiming a tax sale surplus and that National City is not entitled to the surplus in question because the 2001 amendment, which deleted Section 6–1.1–24–7(b)(3), removed National City from the class of persons authorized to make such a claim. We cannot agree.

Prior to July 1, 2001, Indiana Code Section 6–1.1–24–7(b) provided as follows:

(b) The:

(1) owner of record who is divested of the owner's property by the issu-

ance of a tax deed to the tax sale purchaser;

(2) tax sale purchaser or purchaser's assignee, upon redemption of the tract or item of real property; or

(3) person with a substantial property interest of public record, as defined in section 1.9 of this chapter and as evidenced by the issuance of a tax deed to a tax sale purchaser, in a county:

(A) having a population of more than two hundred thousand (200,-000) but less than four hundred thousand (400,000);

(B) having a consolidated city; or

(C) in which the county auditor and the county treasurer have an agreement under IC 6–1.1–25–4.7;

may file a verified claim for money which is deposited in the tax sale surplus fund.

Subsection (b)(3) was deleted effective July 1, 2001. In essence, Section 6–1.1–24–7(b) sets forth the procedure for making a claim of tax sale surplus funds directly with the county auditor ("administrative procedure").

CANA's contention, that a mortgagee or a judgment lienholder like National City lacks standing to assert a claim, was resolved in *Brewer v. EMC Mortgage Corp.*, 743 N.E.2d 322 (Ind.Ct.App.2001), *trans. denied*, where this court held that a person with a substantial interest in real property sold at a tax sale is not limited to the administrative procedure set forth in Indiana Code Section 6–1.1–24–7 as a route for claiming a tax sale surplus. That holding was approved by our supreme court in *Lake County Auditor v. Burks*, 802 N.E.2d 896 (Ind.2004). In *Brewer*, we held that former subsection (b)(3) provided "one route, but not the only route, to recover a surplus." *Id.* at 326.[3] In that

---

**3.** CANA correctly notes that *Brewer* was de- cided before Indiana Code Section 6–1.1–24–

case, unbeknownst to the property owners and the mortgagee,[4] the property was sold to a third party at a tax sale. That sale resulted in a surplus. The mortgagee later obtained a default judgment and a decree of foreclosure. An order of discharge from bankruptcy eliminated the owners' personal liability on the mortgagee's judgment. Thereafter, the bankruptcy trustee abandoned the tax sale surplus, which had been part of the bankruptcy estate, and the mortgagee filed a motion for *in rem* proceeding supplemental, claiming the tax sale surplus, which motion was granted.

On appeal the owners claimed that the trial court improperly awarded the surplus to the mortgagee. This court disagreed, interpreting Indiana Code Section 6–1.1–24–7 to provide those with a "substantial property interest of record" in counties of a certain size with an administrative alternative to the remedy of a lawsuit that remained available in all counties. *Id.* We observed that the mortgagee was a "person with a substantial property interest of public record" as defined elsewhere in Indiana's tax code[5] and that the discretionary language in former Indiana Code Section 6–1.1–24–7(b)(3), under which persons with a "substantial property interest *may* file such a claim for funds," merely provided an alternative procedure for obtaining tax sale surplus funds, namely, an administrative procedure. *Brewer*, 743 N.E.2d at 325–26 (emphasis in original). Indeed, "[n]othing in the statute *prohibits* [interested] persons from filing their claim with the trial court." *Id.* at 326 (emphasis added).

Our supreme court recently embraced *Brewer* and likewise concluded that Section 6–1.1–24–7(b) "does not purport to provide an exhaustive list of persons who may claim a tax-sale surplus. Rather, it merely provides an administrative procedure for the record owner to recover the surplus if it is clear who that is." *Burks*, 802 N.E.2d at 899.[6] In *Burks*, the record property owner's heir lived in and cared for the property after the owner's death. The subsequent sale of the property at a tax sale generated a surplus. In a declaratory judgment action, Burks claimed that she was the owner of the property on the date of the tax sale and, therefore, was entitled to the surplus.

 The supreme court held that the reasoning applied in *Brewer* to subsection (b)(3) applied equally to subsections (b)(1) and (2). *Burks*, 802 N.E.2d at 899. The court explained:

> If the administrative remedy were the only means to recover a surplus, the statute would produce severe unfairness for those who in fact have an interest in the property, albeit unrecorded, and would give the county a windfall .... [A]nyone whose interest is of record

---

7 was amended to delete subsection (b)(3). But, we noted in *Brewer* that the mortgage had a remedy to recover its interest in the real estate under former Indiana Code Section 6–1.1–24–7(b)(3) and also that section 7 was not the only route for one with a substantial interest in the property to recover a tax sale surplus.

4. The mortgage was assigned twice before the tax sale surplus was awarded to the ultimate assignee. We refer to the original mortgagee and its assignees simply as "the mortgagee."

5. The court in *Brewer* held that the mortgagee qualified as a "person with a substantial property interest of public record" as defined in Indiana Code Sections 6–1.1–1–1, 6–1.1–1–11, and 6–1.1–24–1.9. However, Indiana Code Section 6–1.1–1–11 defines "personal property" and does not reference interest in personal or real property.

6. Contrary to CANA's assertion, *Burks* was decided based on the current version of Indiana Code Section 6–1.1–24–7, not on the statute as worded before the 2001 amendment.

may pursue the less expensive and quicker administrative remedy, but others must pursue their claims to a tax surplus in the trial court. Those who . . . think they have a claim, but are not in these preferred categories must take that claim to a trial court where the right of others potentially interested in the surplus can be fully considered.

*Id.* at 900. In other words, only the owner, at the time of a tax sale, of real estate sold at a tax sale and the tax sale purchaser may use the administrative procedure provided by the statute to claim a tax sale surplus, but the administrative procedure is not the only avenue available for making such a claim.

■ The permissive language in Indiana Code Section 6–1.1–24–7 shows that the administrative procedure set forth there constitutes only one of several avenues available to make such a claim. Persons with an interest in the real estate, including those who did not own the real estate at the time of the tax sale or who did not purchase the real estate at the tax sale, may assert a claim for a tax sale surplus directly with the trial court. We conclude, therefore, that the 2001 amendment to Indiana Code Section 6–1.1–24–7(b) did not affect National City's right to claim the tax sale surplus through the trial court.

### National City had a substantive right to the tax sale surplus

■ Having determined that National City had a right to claim the surplus apart from Indiana Code Section 6–1.1–24–7, we next address the propriety of the trial court's award of the surplus to National City. In this case, National City had a substantial interest in the real estate by virtue of its foreclosure judgment. As noted in *Burks* and *Brewer,* those with a substantial interest in real estate sold at a tax sale are not limited to the administrative procedure set forth in Indiana Code Section 6–1.1–24–7(b) but, rather, may petition a trial court to recover that interest from the tax sale surplus. *See Burks,* 802 N.E.2d at 900; *see Brewer,* 743 N.E.2d at 326. Implicit in this holding is the fact that non-owners may have an interest in the real estate sold at a tax sale. Just as the owner's heir in *Burks* had a substantial interest in the real estate at issue in that case, giving her standing to claim the tax sale surplus outside of Indiana Code Section 6–1.1–24–7, so, too, does National City have a substantial interest in the real estate here by virtue of its foreclosure judgment and, therefore, a right to claim the tax sale surplus at issue here.

National City's judgment was a lien against the real estate subject to the tax sale. That judgment had priority over the interest of the owner, Fansler, and Fansler's quitclaim deed conveyed no greater interest than he possessed. *See Downing v. G. Douglass Owens, Mahoney, Heineman & Co., P.C.,* 809 N.E.2d 444, 451 (Ind.Ct.App.2004) (holding that the grantee of a quitclaim deed to a parcel of real property cannot alter the strength of its interest in the parcel merely by converting the quitclaim deed to a warranty deed in a subsequent conveyance). Therefore, the interest of CANA, Fansler's successor, was also subject to National City's judgment.

The tax deed extinguished National City's lien against the real estate but did not otherwise affect National City's money judgment. In other words, neither Fansler nor CANA could improve its position vis-à-vis the tax sale surplus merely because a tax deed was executed. Rather, National City's lien against the real estate was extinguished by the execution of the tax deed, but the lien followed the proceeds of the sale and attached to the surplus. Therefore, the interest of National City in the tax sale surplus had priority

over the interest of CANA. Because the tax sale surplus did not satisfy National City's judgment, the entire surplus was properly awarded to National City.

### Conclusion

National City's right to claim the tax sale surplus was not affected by the 2001 amendment to Indiana Code Section 6–1.1–24–7 because that statute merely sets forth an administrative procedure for owners to claim a tax sale surplus. National City had a substantial interest in the real estate based on the judgment entered before CANA bought the real estate from Fansler. Therefore, the trial court correctly awarded the surplus to National City rather than to CANA. We affirm the trial court's judgment awarding the surplus to National City.

Affirmed.

SULLIVAN, J., and RILEY, J., concur.