

**FILED**

May 12 2015, 10:45 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEES |
|---|---|
| John William Davis, Jr. | Jamie C. Woods |
| Davis & Roose | Daniel G. Herbster |
| Goshen, Indiana | Thorne & Grodnik, LLP |
| | Mishawaka, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mary Ellen Stump, | May 12, 2015 |
| *Appellant-Petitioner,* | Court of Appeals Cause No. 71A04-1407-MI-327 |
| v. | Appeal from the St. Joseph Circuit Court. |
| St. Joseph County Treasurer, St. Joseph County Auditor, Cavallino Financial, LLC, Donald Wertheimer, James H. Shallenbarger, Jr., and Phillip Miller, | The Honorable Michael G. Gotsch, Judge. |
| *Appellees-Respondents.* | Cause No. 71C01-0709-MI-206 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Petitioner, Mary Ellen Stump (Stump), appeals the trial court's order denying her petition for release of tax sale surplus, in favor of St. Joseph County Treasurer, St. Joseph County Auditor (Auditor), Cavallino Financial, LLC (Cavallino), Donald Wertheimer, James R. Shallenbarger, Jr. (Shallenbarger), and Phillip Miller (Miller).

We reverse and remand with instructions.

## ISSUES

Stump raises three issues on appeal, which we restate as follows:

(1) Whether Stump's claim for the tax sale surplus was timely made pursuant to Indiana Code section 6-1.1-24-7;

(2) Whether Stump's lien on the tax sale surplus takes priority over the other claims; and

(3) Whether Stump is entitled to Shallenbarger's interest in the tax sale surplus based on the joint tenancy in the real estate.

By special warranty deed dated February 13, 2004, title to the property located at 708 W. Battell Street in Mishawaka, Indiana (the Property) was conveyed to James H. Shallenbarger, Jr. a/k/a Jim Shallenbarger (Shallenbarger) and Phillip Miller (Miller) as joint tenants with rights of survivorship. On October 24, 2007, the Property was sold at the St. Joseph County Delinquent Tax sale for $25,000.00. The Property was not redeemed and title was issued to the tax sale purchaser on January 15, 2009, generating a tax sale surplus of $20,391.95.

Previously, on November 5, 2008, Cavallino Financial, LLC (Cavallino), a company specialized "in locating unclaimed assets and reuniting them with heirs and/or beneficiaries," requested the Auditor by letter to reimburse the full amount of the tax sale surplus to Shallenbarger, enclosing a limited power of attorney signed by Shallenbarger. (Appellant's App. p. 10). Rejecting the request, the Auditor informed Cavallino that both owners of the Property would have to sign the release for the full amount of the surplus. On March 19, 2009, Attorney Donald Wertheimer (Attorney Wertheimer), representing Regatta Capital, Ltd. (Regatta), the mortgage lender on the Property which Shallenbarger and Miller defaulted on, contacted the Auditor and forwarded unsigned authorizations by Shallenbarger and Miller, purportedly consenting to

---

[1] In her Argument section, Stump informs this court that the facts have been stipulated. However, while we agree that the parties appear to be in agreement about the essential facts, no formal, factual stipulation was accepted by the trial court or entered in the chronological case history.

Attorney Wertheimer's acceptance of the tax sale surplus on their behalf. The Auditor refused to release the surplus. In September of 2009, Shallenbarger contacted the Auditor's office requesting half of the tax sale surplus, or $10,195.98. A check was issued for that amount but a stop payment order was subsequently placed on the check. On September 14, 2009, the Auditor notified all interested parties that, due to the many requests and allegations of entitlement to the tax sale surplus, the Auditor would not distribute the funds until a court determined the ownership of the funds and advised the parties to resolve their claims before the tax sale surplus reverted to the County's general fund.

[6] On March 12, 2010, Cavallino filed its petition for release of surplus, averring to act as the agent of Shallenbarger and Miller in accordance with a signed limited power of attorney. On April 13, 2010, Attorney Wertheimer, as counsel for Regatta, filed a motion to intervene and objection to Cavallino's petition for release. On April 14, 2010, the trial court conducted a hearing, at the close of which the trial court continued the case "to be reset" for an evidentiary hearing. (Appellant's App. p. 148).

[7] On November 20, 2013, Stump filed a motion to intervene in the proceedings, claiming a "first and prior judgment lien" on the share of Shallenbarger's tax sale surplus. (Appellant's App. p. 37). She had obtained a prior judgment in the amount of $53,171.18 against Shallenbarger on December 22, 2006. The execution of this judgment was subsequently served on the Auditor sometime in November 2013. The Auditor refused to honor the execution, resulting in

Stump intervening in the current cause. On January 21, 2014, Stump's motion to intervene was granted without objection and on the same day, she filed a corrected petition for release of the tax sale surplus. On February 12, 2014, the Auditor filed a statement of facts and objection to Stump's corrected petition. On June 16, 2014, the trial court conducted a hearing on Stump's corrected petition. After entertaining arguments of counsel but entering no findings of fact or conclusions thereon, the trial court summarily denied Stump's petition the following day.

[8] Stump now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

[9] Actions seeking payment of a tax sale surplus are essentially ones for a declaratory judgment. *Beneficial Ind. Inc. v. Joy Props. LLC*, 942 N.E.2d 889, 891-92 (Ind. Ct. App. 2011), *reh'g denied*, *trans. denied*. Declaratory orders have the force and effect of a final judgment, and we review them in the same manner as other judgments. *Id*. In its declaratory judgment, the trial court made no findings of fact or conclusions of law thereon, therefore, when the court formulates a general judgment, we presume the court correctly followed the law. *In re H.M.C.*, 876 N.E.2d 805, 808 (Ind. Ct. App. 2007). We do not reweigh the evidence or assess the credibility of the witnesses and we view the evidence in the light most favorable to the judgment. *Id*.

[10]  Stump's appeal presents a question of statutory interpretation. The interpretation of a statute is a question of law, which our court reviews *de novo*. *Taylor v. State*, 7 N.E.3d 362, 365 (Ind. Ct. App. 2014). If "the statutory language is clear and unambiguous[,]" we do not apply any rules of statutory construction. *Id.* Rather, words and phrases will "be given their plain, ordinary, and usual meanings." *Id.* However, where the "statute is susceptible to multiple interpretations, it is deemed ambiguous and open to judicial construction." *Id.*

[11]  When construing a statute, we endeavor to give effect to the intent of the General Assembly. *Id.* We presume that the legislature intended the statutory language to "be applied logically and not to bring about an unjust or absurd result." *Alvey v. State*, 10 N.E.3d 1031, 1033 (Ind. Ct. App.), *aff'd on reh'g*, 15 N.E.3d 72 (Ind. Ct. App. 2014). In order to determine and implement the General Assembly's intent, we must consider the statute as a whole, "read[ing] sections of an act together so that no part is rendered meaningless if it can be harmonized with the remainder of the statute." *Id.* In addition to the language itself, we may look "to the nature and subject matter of the act and the object to be accomplished thereby." *Id.* As we consider this question of law in the matter before us, we are mindful of our supreme court's admonition to "give a statute practical application by construing it in a way favoring public convenience and avoiding absurdity, hardship, and injustice." *Beneficial Ind. Inc.*, 942 N.E.2d at 892 (citing *Merritt v. State*, 829 N.E.2d 472, 475 (Ind. 2005)).

## II. *Timely Claim*

[12]  Stump contends that the trial court abused its discretion in denying her corrected petition for the release of the tax sale surplus. Disputing the Auditor's claim that no valid filing was timely made, Stump asserts that a claim was properly filed within the statutory term of three years either by Shallenbarger through the informal procedure of Ind. Code § 6-1.1-24-7(c)(1) or by Cavallino by filing a claim in the trial court pursuant to I.C. § 6-1.1-24-7(d)(2).

[13]  The tax sale process is a purely statutory creation and requires material compliance with each step of the applicable statutes. *See* I.C. §§ 6-1.1-24-1 through -15; 6-1.1-25-1 through -19; *Prince v. Marion Cnty. Auditor*, 992 N.E.2d 214, 219-20 (Ind. Ct. App. 2013), *trans. denied*. Indiana Code Chapter 6-1.1-24 governs the sale of real property when taxes or special assessments become delinquent. If a real estate owner fails to pay property taxes, the property may be sold to satisfy the outstanding tax obligation. *See In re 2005 Tax Sale Parcel No. 24006-001-0022-01*, 898 N.E.2d 349, 353 (Ind. Ct. App. 2008). After a tax sale, the county treasurer "shall apply" the amount paid to taxes, assessments, penalties, costs, and other delinquent property taxes; thereafter, any balance is to be placed in a tax sale surplus fund. I.C. § 6-1.1-24-7(a). In the event of a tax sale surplus, the statute authorizes that a verified claim for a refund can be made by

> (c) The:
>
> > (1) owner of record of the real property at the time the tax deed is issued who is divested of ownership by the issuance of a tax deed; or

(2) tax sale purchaser or purchaser's assignee, upon redemption of the tract or item of real property[.]

[]. If the claim is approved by the county auditor and the county treasurer, the county auditor shall issue a warrant to the claimant for the money due.

(d) If the person who claims money deposited in the tax sale surplus fund under subsection (c) is:

(1) a person described in subsection (c)(1) who acquired the property from a delinquent taxpayer after the property was sold at a tax sale under this chapter; or

(2) a person not described in subsection (c)(1), including a person who acts under a power of attorney executed by the person described in subsection (c)(1);

the county auditor may issue a warrant to the person only as directed by the court having jurisdiction over the tax sale of the parcel for which the surplus claim is made.

I.C. § 6-1.1-24-7(c). Accordingly, "only the owner, at the time of a tax sale, of real estate sold at a tax sale and the tax sale purchaser may use the administrative procedure provided by the statute to claim a tax sale surplus." *CANA Investments, LLC v. Fansler*, 832 N.E.2d 1103, 1105 (Ind. Ct. App. 2005). Nevertheless, this procedure is not the only method to determine whether an individual holds a substantial interest in the property as "a claimant other than the one identified in the statute may pursue disbursement of the tax sale surplus in the trial court." *Beneficial Ind. Inc.*, 942 N.E.2d at 894.

[14] An individual purporting to claim a tax sale surplus is not vested with an unlimited time in which to file for his or her refund. If the balance of the tax sale surplus is not claimed within "the three year period after the date of its receipt," the amount deposited in the tax sale surplus fund "may not be

disbursed," but instead "shall be transferred by the county auditor to the county general fund." I.C. § 6-1.1-24-7(f).

[15] Cavallino's initial request, submitted to the Auditor on November 5, 2008, to release the surplus generated from the tax sale on October 24, 2007, was rejected because of the defective limited power of attorney attached to its letter. The Auditor rejected Regatta's March 19, 2009 petition on similar grounds. Despite issuing a check at Shallenbarger's request for one-half of the tax sale surplus, the Auditor issued a stop payment order and informed all parties that ownership should be determined by the trial court before any disbursement of the surplus could be made. As the competing claims "require[d] resolution of factual issues or complex questions of law," a trial court "is [] better suited to resolve this than a county auditor." *Lake Cnty. Auditor v. Burke*, 802 N.E.2d 896, 900 (Ind. 2004) (also noting that the statutorily proposed administrative remedy should be interpreted as being "elective but not exclusive").

[16] Accordingly, pursuant to I.C. § 6-1.1-24-7(d)(2), Cavallino filed its petition for release of surplus on March 12, 2010, prior to the tax sale's three-year anniversary on October 24, 2010. Immediately thereafter, on April 13, 2010, Regatta intervened in the cause and also asserted a claim to the surplus. After the trial court continued the case "to be reset" for an evidentiary hearing, no further proceedings occurred in the pending cause until November 20, 2013, when Stump intervened, averring a first and prior judgment lien on Shallenbarger's interest in

the tax sale surplus. (Appellant's App. p. 148). Stump's intervention in the existing action was approved by the trial court, without objection from the Auditor, on January 21, 2014. Once joined, Stump was treated as an original party and elevated to an equal standing with the other parties in the action. *See In re Guardianship of A.L.C.*, 902 N.E.2d 343, 351 (Ind. Ct. App. 2009).

Nevertheless, the Auditor now contends that Stump's intervention was untimely. Because no valid claim was asserted within the three-year period proposed in I.C. § 6-1.1-24-7(f), the tax surplus reverted to the general fund and therefore, the Auditor maintains that no refund can be disbursed. Focusing on the ordinary phrasing of the statute, the Auditor argues that "I.C. § 6-1.1-24-7(f) should not be interpreted in such a way as to render its three year deadline to make valid claims for a tax sale surplus meaningless or useless." (Appellees' Br. p. 14). According to the Auditor's argument, the plain language clearly indicates that "the [s]urplus may not be distributed if not validly claimed within the three year deadline." (Appellees' Br. p. 11). As such, even if I.C. § 6-1.1-24-7(f) "is not an escheat per se, it still has an effect that is at least analogous to an escheat." (Appellees' Br. p. 14). We disagree.

Although the Auditor's Appellate Brief is littered with assertions that a *valid* claim must be made within the statutory term of three years, the statute merely stipulates that a claim for a tax sale surplus must be filed within a three-year period after the date of the balance's receipt. *See* I.C. § 6-1.1-24-7(f). As the statute "does not purport to provide an exhaustive list of persons who may claim a tax sale surplus," but rather allows any person claiming an entitlement

to the money to file a claim, the validity is a legal determination which must be made by a court of law. *See Burks*, 802 N.E.2d at 899. Because a claim was pending at the time of the three-year anniversary of the tax sale surplus, the balance should not have been transferred to the county general fund. Moreover, even if after three years the surplus "must" be transferred to the county general fund, the statute is discretionary as to the possibility to disburse the surplus if a legal conclusion on the validity of the claim is reached after the three-year period. *See Brewer v. EMC Mortg. Corp.*, 743 N.E.2d 322, 326 (Ind. Ct. App. 2001) (the language 'may' is permissive and not mandatory), *trans. denied*. Accordingly, by inserting the permissive verb-tense, the statute's drafters did not intend for it to effectively work as an escheat by depriving those who have an interest in the Property. *See also Burks*, 802 N.E.2d at 899-900 (discussing I.C. § 6-1.1-24-7(b), we stated that "[t]he statute does not in effect cause an escheat to the County by denying those with an interest in property the right to claim the surplus").

[20] Cavallino filed its petition for a disposition of the tax sale surplus within the three-year time period after receipt of the money, as envisioned by the statute. Despite the longevity of the claim and the parties' inactivity in the proceedings, a legal determination on its validity is still pending and the cause was never disposed of or dismissed by the trial court. Because the proceedings are still ongoing, Stump could intervene and request a release of the tax sale surplus. Even though the Auditor had the opportunity to object to her intervention, he failed to do so and the trial court approved her motion. *See Valparaiso Technical*

*Inst., Inc. v. Porter Cnty. Treasurer*, 682 N.E.2d 819, 821 (Ind. Ct. App. 1997) (The court may consider an objection to intervention from the original parties, as these parties are masters of their action and should be given input into who they want to sue.), *reh'g denied*. Therefore, we conclude that Cavallino's claim was timely asserted, and Stump properly intervened in these pending proceedings.[2]

## III. *Priority of Stump's Lien*

[21] Because of the competing claims asserting ownership over Shallenbarger's interest in the tax sale surplus, it is imperative to determine the priority of these claims. First, Cavallino claimed the share as agent for Shallenbarger, then Regatta sought to intervene as the lender of the Property's mortgage Shallenbarger defaulted on, and lastly, Stump executed a lien on the surplus and intervened in the current proceeding.

[22] Without analyzing the validity of Cavallino's claim as agent for Shallenbarger, we find that Stump's lien has priority over Cavallino's claim. Because Cavallino's claim is contingent on Shallenbarger retaining an interest in the surplus, and Stump holds a judgment lien against Shallenbarger's interest,

---

[2] In their appellate Briefs, the parties also argue the applicability of I.C. § 6-1.1-24-7(e), which provides that "[a] court may direct the issuance of a warrant only: (1) on petition by the claimant; and (2) within three years after the date of sale of the parcel in the tax sale." This subsection (e) was added to the statute by the Second Regular Session of the 116th General Assembly, originally as subsection (d) but has since been recodified as subsection (e), and became effective July 1, 2010, after Cavallino filed its petition for the tax sale surplus. As we apply the statute in effect at the time the petition was filed, absent clear legislative indication for a retroactive application, we will refrain from evaluating the merits of the parties' respective arguments with respect to subsection (e) and express no opinion thereon. *See Martin v. State*, 774 N.E.2d 43, 44 (Ind. 2002) ("[U]nless there are strong and compelling reasons, statutes will normally be applied prospectively.)

Stump's lien takes priority. *See Bowyer Excavating , Inc. v. Comm'r, Ind. Dep't of Environmental Mgmt.*, 671 N.E.2d 180, 187 (Ind. Ct. App. 1996) (claims that have not been reduced to judgments do not create liens), *trans. denied*.

[23] On April 13, 2010, Regatta moved to intervene in the proceedings commenced by Cavallino. During the hearing held the following day, Regatta admitted to not having notified the other parties and the trial court agreed to "reset" the cause after Regatta "g[o]t service." (Appellant's App. p. 148). Thereafter, Regatta has not participated nor sought to participate in any proceedings before the court, and neither did the trial court rule on its motion to intervene. Although Regatta, as mortgage lender, can arguably assert an interest in the tax sale surplus, it abandoned the proceeding by failing to seek service and to properly intervene in the cause. Thus, as Regatta did not secure its interest, Stump's lien on the tax sale surplus takes priority.

IV. *Shallenbarger's Joint Tenancy in the Property*

[24] After concluding that Stump's claim was timely filed, and that she holds a priority lien on Shallenbarger's interest in the tax sale surplus, we need to determine what interest Shallenbarger retained in the tax sale surplus based on his joint tenancy in the Property. Stump maintains that the joint tenancy in the Property was extinguished by the tax sale and instead followed the proceeds of the tax sale as a tenancy in common. Accordingly, by virtue of the judgment lien, Stump asserts her entitlement to Shallenbarger's one-half share of the tax sale surplus.

Shallenbarger and Miller created a joint tenancy with rights of survivorship on the Property by special warranty deed on February 13, 2004. It is well established that "the creation of a joint tenancy relationship [in real estate] entitles each party to an equal share of the proceeds of the sale" of the real estate. *Cunningham v. Hastings*, 556 N.E.2d 12, 14 (Ind. Ct. App. 1990); *see also Hughes v. Hughes*, 356 N.E.2d 225, 234 (Ind. Ct. App. 1976) (holding that "persons who own real property as joint tenants with right of survivorship also hold the right to the proceeds from a contract to sell said realty as joint tenants with right of survivorship unless they express a contrary intent.")

Here, Shallenbarger and Miller created a joint tenancy relationship in the Property and there is no evidence in the record that they expressed an intent that the tax sale surplus be held in any other way than as joint tenants. Accordingly, we remand to the trial court to determine the extent, if any, of Shallenbarger's interest in the tax sale surplus.

## CONCLUSION

Based on the foregoing, we conclude that Stump's claim for the tax sale surplus was timely made pursuant to Indiana Code section 6-1.1-24-7; and that Stump's judgment lien takes priority. However, we remand to the trial court to determine the extent, if any, of Shallenbarger's interest in the tax sale surplus

Reversed and remanded with instructions.

Vaidik, C. J. and Baker, J. concur