

FILED

Sep 26 2017, 7:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher J. McElwee
Monday McElwee & Albright
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Abraham Murphy
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| 2444 Acquisitions, LLC,<br>*Appellant-Defendant,*<br><br>v.<br><br>Michael Fish,<br>*Appellee-Plaintiff.* | September 26, 2017<br><br>Court of Appeals Case No.<br>49A02-1606-MF-1315<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Michael D. Keele,<br>Judge<br><br>Trial Court Cause No.<br>49D07-1103-MF-10806 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, 2444 Acquisitions, LLC (2444 Acquisitions), appeals the trial court's Order granting Appellee-Plaintiff's, Michael Fish (Fish), motion for turnover.

We affirm.

# ISSUE

2444 Acquisitions raises five issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court properly granted Fish's motion for turnover of the tax sale surplus funds.

# FACTS AND PROCEDURAL HISTORY

In 2008, Fish loaned a certain amount of money to 2444 Acquisitions in exchange for a mortgage security interest in several parcels of real estate. On July 5, 2011, the trial court entered a default judgment of foreclosure and agreed entry against 2444 Acquisitions and in favor of Fish in the amount of $263,308.73. On January 24, 2012, Fish filed his praecipe for sheriff's sale of the real estate and the following month, on February 23, 2012, Fish filed his motion for proceedings supplemental. However, on March 5, 2012, 2444 Acquisitions filed a Chapter 11 petition for bankruptcy protection with the bankruptcy court. This cause was dismissed on July 31, 2012.

On March 5, 2014, Fish again filed his praecipe for sheriff sale of the real estate. The next day, 2444 Acquisitions filed a second Chapter 11 petition for

bankruptcy protection under cause no. 14-01578-RLM-7. On September 19, 2014, Fish filed his adversarial complaint for turnover property in the bankruptcy court under cause no. 14-50173. After a hearing on Fish's complaint, the bankruptcy court ordered the Marion County Auditor to turn over the tax sale surplus funds to counsel for 2444 Acquisitions to be held in counsel's trust account. On October 15, 2014, 2444 Acquisitions' counsel filed a motion to approve procedure for interim fee payments, to which Fish objected on October 17, 2014. Over Fish's objection, the bankruptcy court granted counsel's motion for payment of interim fees. On March 19, and again on November 2, 2015, counsel for 2444 Acquisitions filed a notice of draw seeking payment of attorney fees and expenses in the amount of $14,707.95 and $9,224.22 respectively. The bankruptcy court approved each notice over Fish's objections.

[6]     On February 3, 2016, Fish filed a motion to dismiss 2444 Acquisitions' bankruptcy case based upon his contention that the business was not operating or earning income. The bankruptcy court dismissed the case on February 26, 2016, which also resulted in the dismissal of Fish's adversarial complaint for turnover property. Following the dismissal, 2444 Acquisitions' counsel transferred the tax sale surplus funds from his trust account to his client.

[7]     On March 29, 2016, Fish filed with the trial court his motion for turnover of surplus funds from the tax sale that are in the possession of 2444 Acquisitions, and for a request to issue an order preserving the status quo pending an expedited hearing. 2444 Acquisitions filed its response in opposition on April

12, 2016. On May 9, 2016, after conducting a hearing, the trial court granted Fish's motion for turnover, concluding that "[a]s a matter of law, [Fish] has a substantial interest in said aforementioned properties; [Acquisition 2444] has no entitlement to said tax surplus funds and no protectable interest relative to the use of those funds; and equity requires disbursement of the tax surplus funds [sic] to [Fish]." (Appellant's App. Vol. II, p. 14).

[8] 2444 Acquisitions now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[9] 2444 Acquisitions contends that the trial court erred in granting Fish's motion for turnover on the basis that 2444 Acquisitions had no entitlement to the tax sale surplus funds. Actions seeking payment of a tax sale surplus are essentially ones for a declaratory judgment. *Beneficial Ind. Inc. v. Joy Props*. LLC, 942 N.E.2d 889, 891-92 (Ind. Ct. App. 2011), *reh'g denied, trans. denied*. Declaratory orders have the force and effect of a final judgment, and we review them in the same manner as other judgments. *Id*. Here, the trial court entered findings of fact and conclusions of law when it rendered its judgment. *Ember v. Ember*, 720 N.E.2d 436, 438 (Ind. Ct. App. 1999). In reviewing the judgment, we first determine whether the evidence supports the findings, and then whether the findings support the judgment. *Id*. Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id*. The judgment will be reversed only when clearly erroneous, that is, when the judgment is unsupported by the findings of fact. *Id*. We

consider only the evidence most favorable to the judgment and all reasonable inferences flowing thereform. *Id.* We will not reweigh the evidence or assess the credibility of witnesses. *Id.*

[10] The tax sale process is a purely statutory creation and requires material compliance with each step of the applicable statutes. *See* I.C. §§ 6-1.1-24-1 through -15; 6-1.1-25-1 through -19. Indiana Code Chapter 6-1.1-24 governs the sale of real property when taxes or special assessments become delinquent. If a real estate owner fails to pay property taxes, the property may be sold to satisfy the outstanding tax obligation. *See In re 2005 Tax Sale Parcel No. 24006-001-0022-01*, 898 N.E.2d 349, 353 (Ind. Ct. App. 2008). After a tax sale, the county treasurer "shall apply" the amount paid to taxes, assessments, penalties, costs, and other delinquent property taxes; thereafter, any balance is to be placed in a tax sale surplus fund. I.C. § 6-1.1-24-7(a). In the event of a tax sale surplus, the statute authorizes that a verified claim for refund can be made by

> (c) The:
>
> (1) owner of record of the real property at the time the tax deed is issued who is divested of ownership by the issuance of a tax deed; or
>
> (2) tax sale purchaser or purchaser's assignee, upon redemption of the tract or item of real property[.]
>
> [] If the claim is approved by the county auditor and the county treasurer, the county auditor shall issue a warrant to the claimant for the money due.

(d) If the person who claims money deposited in the tax sale surplus fund under subsection (c) is:

(1) a person described in subsection (c)(1) who acquired the property from a delinquent taxpayer after the property was sold at a tax sale under this chapter; or

(2) a person not described in subsection (c)(1), including a person who acts under a power of attorney executed by the person described in subsection (c)(1);

The county auditor may issue a warrant to the person only as directed by the court having jurisdiction over the tax sale of the parcel for which the surplus claim is made.

I.C. § 6-1.1-24-7(c). Interpreting this statute, we noted in *Brewer v. EMC Mortgage Corp.*, 743 N.E.2d 322, 326 (Ind. Ct. App. 2001), *trans. denied*, and *CANA Investments, LLC v. Fansler*, 832 N.E.2d 1103, 1105 (Ind. Ct. App. 2005), that

only the owner, at the time of a tax sale, of real estate sold at a tax sale and the tax sale purchaser may use the administrative procedure provided by statute to claim a tax sale surplus, but the administrative procedure is not the only avenue for making such a claim.

Accordingly, persons "with an interest in the real estate, including those who did not own the real estate at the time of the tax sale or who did not purchase the real estate at the tax sale, may assert a claim for a tax sale surplus directly with the trial court." *CANA Investments*, LLC, 832 N.E.2d at 1107.

[11] As 2444 Acquisitions does not dispute that Fish holds a valid mortgage over the real estate, Fish must be considered a person with a substantial property interest of public record and thus is allowed to petition the trial court for the tax sale surplus funds. *See Brewer*, 743 N.E.2d 325-26 (a mortgagee qualifies as a person with a substantial property interest of public record). Thus, because the trial court had issued a foreclosure judgment with respect to the real estate in favor of Fish on July 5, 2011, which resulted in a lien against the real estate subject to the tax sale, Fish's interest in the property had priority over the interest of the owner, 2444 Acquisitions. *See CANA Investments, LLC*, 832 N.E.2d at 1107.

[12] Contesting Fish's entitlement to the tax sale surplus funds, Acquisition 2444 raises several challenges. First, 2444 Acquisitions contends that Fish's procedural vehicle of a motion for turnover to claim the tax sale surplus funds is incorrect as he should have pursued his claim by using proceedings supplemental, provided by Indiana Trial Rule 69. However, I.C. § 6-1.1-24-7 merely specifies that a person with a substantial interest in real property can assert a claim for tax surplus funds directly with the trial court, without indicating the procedural conduit to file the claim. Accordingly, by bringing a motion for turnover with the trial court, Fish asserted his claim "directly with the trial court." I.C. § 6-1.1-24-7. Moreover, *assuming arguendo* that Fish utilized the incorrect procedure to bring his claim, we note that actions seeking payment of a tax sale surplus are in essence actions for a declaratory judgment, which are "generally equitable in nature, although it may take on the color of either equity or law, depending on the issue presented." *Beneficial Ind., Inc.*, 942

N.E.2d at 892 (*citing* 10 I.L.E., *Declaratory Judgments* § 15 (2005)). Equity cannot acquiesce in a party's pursuit of unconscionable results and will look to substance rather than form while seeking the avoidance of a windfall. *Id*. As Fish has a more substantial interest in the tax sale surplus funds than 2444 Acquisitions, we find that equity requires the disbursement of the funds to Fish.

[13] Next, 2444 Acquisitions claims that Fish was collaterally estopped from pursuing his motion for turnover because the turnover of the tax sale surplus funds had been litigated previously in the bankruptcy court. Collateral estoppel bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit. *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 704 (Ind. Ct. App. 2005), *trans. denied*. Where collateral estoppel is applicable, the former adjudication will be conclusive in the subsequent action even if the two actions are on different claims. *Id*. However, the former adjudication will only be conclusive as to those issues that were actually litigated and determined therein. *Id*. Collateral estoppel does not extend to matters that were not expressly adjudicated and can be inferred only be argument. *Id*.

[14] In determining whether to allow the use of collateral estoppel, the trial court must engage in a two-part analysis: (1) whether the party in the prior action had a full and fair opportunity to litigate the issue, and (2) whether it is otherwise unfair to apply collateral estoppel given the facts of the particular case. *Id*. at 705. The factors to be considered by the trial court in deciding whether to apply collateral estoppel include privity, the defendant's incentive to

litigate the prior action, and the ability of the plaintiff to have joined the prior action. *Id.* These factors are not exhaustive but provide a framework for the trial court. *Id.* A trial court is afforded great deference to disallow the offensive use of collateral estoppel because it is the trial court that will devote the time to try the case. *Id.*

[15]   On September 19, 2014, Fish filed his adversarial complaint for turnover property in the bankruptcy proceedings. After a hearing on Fish's complaint, the bankruptcy court ordered the Marion County Auditor to turn over the tax surplus funds to counsel for 2444 Acquisitions to be held in counsel's trust account "until further order of the court." (Appellant's App. Vol. II, p. 88). During the hearing in the current proceedings, the uncontradicted testimony by Fish's counsel revealed that 2444 Acquisitions' counsel was specifically instructed "to keep it in his trust account pending an adjudication of who is entitled to the tax surplus funds." (Transcript p. 5). Although the bankruptcy court granted Fish's motion "in part," and later dismissed the Chapter 11 bankruptcy proceedings altogether, no final adjudication as to the ownership of the tax sale surplus funds was ever reached by the court. Accordingly, as the issue was not decided, Fish's current action is not estopped.[1]

---

[1] In a similar argument, 2444 Acquisitions contends that the trial court erred by granting Fish' motion for turnover because his motion was moot as the "bankruptcy court already heard and ruled on Fish's motion for turnover of the tax sale proceeds[.]" (Appellant's Br. p. 14). However, because we find that the bankruptcy court did not make a final decision as to the party entitled to the funds, we also deny 2444 Acquisitions' argument based on mootness.

[16] In a related argument, 2444 Acquisitions argues that Fish waived his right to pursue the tax sale surplus funds by failing to appeal the decision of the bankruptcy court. Specifically, 2444 Acquisitions claims that "[b]y affirmatively taking action to have [Acquisition 2444's] bankruptcy case and his own adversary proceeding for turnover dismissed, Fish ha[s] relinquished any right that he may have had to turnover the tax sale proceeds." (Appellant's Br. p. 17). Waiver is the intentional relinquishment of a known right; an election by one to forego some advantage he might have insisted upon." *Lafayette Car Wash, Inc. v. Boes*, 282 N.E.2d 837, 839 (Ind. 1972), *reh'g denied*. "A person who is in a position to assert a right or insist upon an advantage may, by his own words or conduct, and without reference to any act or conduct of the other party affected thereby, waive such right." *Id*. "[B]ecause waiver is an affirmative act, a party's mere silence, acquiescence or inactivity does not constitute waiver unless the party has a duty to speak or act." *Pohle v. Cheatham*, 724 N.E.2d 655, 659 (Ind. Ct. App. 2000). The uncontradicted testimony of 2444 Acquisitions' counsel at the hearing reflects that on the same day the bankruptcy court dismissed the cause at the request of the Office of the United States Trustee and Fish, Fish's counsel requested the bankruptcy court "to make a subsequent order regarding the funds and what she said was I can't, the case is dismissed, I no longer have jurisdiction over the funds." (Tr. p. 6). After the case was dismissed by the bankruptcy court, Fish continued to pursue the cause before the trial court. Accordingly, we find that Fish did not waive this right.

Lastly, 2444 Acquisitions asserts that the trial court erred when it failed to take into account the amounts already previously distributed to its attorney by order of the bankruptcy court and the amount owed by Fish to a former member of 2444 Acquisitions. However, 2444 Acquisitions fails to cite to any authority or evidence to support this argument, and accordingly, we find its claim to be waived. *See* Appellate Rule 46(A)(8)(a).

# CONCLUSION

Based on the foregoing, we hold that the trial court did not err in granting Fish's motion for turnover.

Affirmed.

Robb, J. and Pyle, J. concur