876 N.E.2d 805 (2007)
In re the Name Change of H.M.C., F.S.C. and S.A.C., b/n/f Tricia Gracey Tominack, Appellant-Petitioners,
v.
William Archie Curtis, Appellee-Respondent.
No. 82A01-0705-CV-206.
Court of Appeals of Indiana.
November 21, 2007.
*806 Tricia Tominack, Evansville, IN, Attorney for Appellant.

OPINION
MAY, Judge.
Tricia Gracey Tominack ("Mother") appeals the denial of her motion to change her children's last names to Tominack. We affirm.[1]

FACTS AND PROCEDURAL HISTORY
Mother and William Curtis had three children: twin girls, F.S.C. and H.M.C., born May 14, 1999, and S.A.C., a boy born May 16, 2000. Mother and Curtis divorced in 2002. Mother was given custody of the children, with Curtis to exercise parenting time and pay support. In 2004, Mother married Jonathan Tominack and began using his last name.
Also in 2004, Mother petitioned to change the children's last names to Tominack. The court denied that petition,[2] but *807 Mother began reporting to doctors, dentists, churches, and the school that the children's last name was Tominack.
In February of 2007, Mother again petitioned to change the children's names to Tominack, asserting it would be in the children's best interests because everyone in their church, school and health care communities already thought their last name is Tominack and because it would now be awkward for the children to use the name Curtis. Curtis objected to the requested change. After a hearing, the court denied Mother's petition in an order that included no findings or conclusions.

DISCUSSION AND DECISION
Initially, we note Curtis did not file an appellee's brief. When an appellee fails to file a brief, "an appellant may prevail by establishing a prima facie case of error." In re Paternity of J.C., 819 N.E.2d 525, 527 (Ind.Ct.App.2004). Prima facie errors are those appearing "at first sight, on first appearance, or on the face of it." Id. Application of this standard relieves us of the burden of developing arguments for the appellee. Id.
[W]e will affirm a general judgment upon any legal theory consistent with the evidence. In making that determination, we will neither reweigh the evidence nor judge the credibility of the witnesses. When reviewing a general judgment, we presume that the trial court correctly followed the law, and this presumption is one of the strongest presumptions applicable to our consideration of a case on appeal.
Lynn v. Windridge Co-Owners Ass'n, Inc., 830 N.E.2d 950, 954-55 (Ind.Ct.App.2005).
When ruling on a name-change petition for a minor child, "the court shall be guided by the best interest of the child rule under IC XX-XX-X-X." Ind.Code § 34-28-2-4(d). Section 31-17-2-8 provides in pertinent part:
In determining the best interests of the child, there is no presumption favoring either parent. The court shall consider all relevant factors, including the following:
(1) The age and sex of the child.
(2) The wishes of the child's parent or parents.
(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4) The interaction and interrelationship of the child with:
(A) the child's parent or parents;
(B) the child's sibling; and
(C) any other person who may significantly affect the child's best interests.
(5) The child's adjustment to the child's:
(A) home;
(B) school; and
(C) community.
(6) The mental and physical health of all individuals involved.
(7) Evidence of a pattern of domestic or family violence by either parent.
While that statute provides "no presumption favoring either parent," id., the name-change statute explains:
There is a presumption in favor of a parent of a minor child who:
(1) has been making support payments and fulfilling other duties in accordance with a decree issued under IC 31-15, IC 31-16, or IC 31-17 (or IC 31-1-11.5 before its repeal); and
(2) objects to the proposed name change of the child.
Ind.Code § 34-28-2-4(d).
Mother first alleges the court ignored the statutory standard and denied the petition in order to punish her for changing *808 the children's names in violation of the court's 2004 order.[3] Our general judgment standard of review requires we presume the trial court correctly followed the law.[4] Therefore, we presume the court considered the best interests of the children.
Mother also asserts "the court overstep[ped] its statutory authority ... by trying to tell a mother whether she has the right to call her children by a name she has chosen for them whether it be a nickname or otherwise." (Appellant's Br. at 1.) The trial court did not determine what nickname Mother uses for her children; rather, it determined their last namewhich implicates their legal identity. Ind.Code § 34-28-2-4 explicitly allows trial courts to make this decision.[5]
Mother next alleges no presumption in favor of Curtis could have arisen under Ind.Code § 34-28-2-4(d) because, although Curtis was paying some support, he was not paying support "in accordance with [the] decree." I.C. § 34-28-1-4(d). We need not determine whether the trial court might have erred by finding a presumption in favor of Curtis, because even without that presumption, we find no error in the trial court's determination the children's best interests did not require the name change.
Mother fails to acknowledge the trial court properly could have chosen to ignore all of Mother's testimony. Mother presumably damaged her own credibility by ignoring the court's prior order denying the name change. Mother's first excuse for ignoring the order was "the wrong standard was used, and the toll went for the appeal." (Tr. at 20.) In addition, Mother noted the prior order used the words "should not, not shall not." (Id.)[6] The trial court was not obliged to believe Mother's testimony the children wanted to change their names. See In re Petition of Meyer, 471 N.E.2d 718, 721 (Ind.Ct.App. 1984) (A child's "purported desires as related by her mother do not meet the required clear and convincing standard.").
*809 Neither was the court required, as Mother argues, to interview the children to determine whether they wanted to change their names. Ind.Code § 31-17-2-9 provides the court "may" interview the child, not that it "must."[7] Whether to interview the children was within the court's discretion, and Mother has not demonstrated an abuse of discretion.
Even had the court interviewed the children and heard testimony they wanted their names changed, the court would not have been required to believe their testimony:
Even had the judge determined [the child] to be sufficiently mature to make a reasoned choice, her testimony would be immediately suspect because of the possibility of undue influence by her mother. In Indiana, the domestic relationship between parent and child raises a presumption of undue influence. This presumption would be particularly strong in a domestic suit where the court is asked by the custodial parent to rely on the testimony of a child of only four and one-half years of age thus making the reliability of any such testimony highly suspect.
Meyer, 471 N.E.2d at 721. While the three children at issue here were three and four years older than the child in Meyer, Mother has not rebutted the presumption of undue influence.[8]
Because Mother has not demonstrated the court erred in finding the children's best interests did not require a name change, we affirm the denial of the petition.
Affirmed.
DARDEN, J., and CRONE, J., concur.
NOTES
[1] In her brief, Mother writes: "The biggest disgrace of all regarding his failure to fulfill his duty to support his children financially was during the year 2004." (Appellant's Br. at 5.); "[Curtis'] priorities are clearly grossly ajar and his attempts to bribe the Mother are outrageous. His objection is in bad faith and selfishly cruel." (Appellant's Br. at 8.); and "[Curtis] needs to now accept the fact the Children have made up their minds, learn to appreciate what is in the best interest of [the children], stop standing in their way of achieving it and at long last get his priorities in the right order." (Appellant's Br. at 9.)

A brief should not only present the issues to be decided on appeal, but it should be of material assistance to the court in deciding those issues. Young v. Butts, 685 N.E.2d 147, 151 (Ind.Ct.App.1997). A brief is far more helpful to this court, and it advocates far more effectively, when its focus is on the case before the court and not on counsel's opponent. Mother's "petulant grousing" is "akin to static on a radio broadcast." Amax Coal Co. v. Adams, 597 N.E.2d 350, 352 (Ind.Ct. App.1992), trans. denied. Mother could have presented her arguments without these "hyperbolic barbs," and we "firmly request the elimination of such surplusage from future appellate briefs." Id.
[2] We have not been provided with any portion of the record of those proceedings.
[3] We are concerned that Mother, who is a licensed attorney in Indiana, disregarded the trial court's 2004 judgment. Additionally, when Mother was testifying under oath, she was somewhat evasive when asked directly about the prior order denying her petition to change the children's names.
[4] The case before us is distinguishable from In re Paternity of J.C., where the court explicitly indicated it did not consider the best interests standard when granting a name change. 819 N.E.2d. at 528 ("Here, the trial court did not reach the question of the child's best interest; instead, the court granted Father's petition because it was `unable to find any agreement by the father to the child retaining Carlisle as a last name.'").
[5] At trial, Mother asserted she had a right to change her children's names without a court order. (See Tr. at 26) ("I believe that I can... my children can call themselves what they want, they can go by the name they want, and I can call them the name I want.").

That is not the law:
A father and mother enjoy equal rights with regard to naming their child. See Tibbitts v. Warren, 668 N.E.2d 1266, 1267 (Ind.Ct. App.1996) ("Upon a determination of paternity, both the mother and father potentially enjoy equal legal rights as parents with regard to issues of support, custody, and visitation. I.C. § 31-6-6.1-10 (1993). We have applied this notion of equality to the naming of the child."), trans. denied; T.J.B. v. G.A.H. (In re Name Change of J.N.H.), 659 N.E.2d 644, 646 (Ind.Ct.App.1995) ("Upon a determination of paternity, both the mother and father potentially enjoy equal legal rights as parents.... Hence, it is only reasonable to allow them equal rights in the naming of the child.").
Fetkavich, 855 N.E.2d at 755.
[6] Mother provided no explanation at trial or on appeal regarding why the phrase "should not" might permit her to ignore the court's order denying her petition to change the children's names.
[7] We assume, without deciding, that this statute, which Mother cited and which is found in the Family Law chapter regarding the availability of interviews during child custody determinations, would permit a trial court to interview a child in the context of a name change. See Truden v. Jacquay, 480 N.E.2d 974, 978 (Ind.Ct.App.1985) (while statute exists in custody chapter, "interview procedure is just as useful in modification of visitation where the court must determine the best interest of the child as in the determination of custody.").
[8] Mother apparently was sufficiently committed to effectuating a name change that she placed her professional status in jeopardy by intentionally violating a court order. This commitment may have influenced, either consciously or unconsciously, the children's desire for a name change.