## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 23 2017, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Erik H. Carter
Carter Legal Services LLC
Noblesville, Indiana

APPELLEE PRO SE

Steven C. Vetor
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Paternity of Stephenie Buck | January 23, 2017 |
| Elizabeth (Buck) Tyler | Court of Appeals Case No. 48A02-1607-JP-1592 |
| *Appellant-Respondent,* | Appeal from the Madison Circuit Court |
| v. | The Honorable G. George Pancol, Judge |
| Steven Vetor, | The Honorable Kevin M. Eads, Magistrate |
| *Appellee-Petitioner* | Trial Court Cause No. 48C02-1109-JP-257 |

**Crone, Judge.**

# Case Summary

[1] Elizabeth (Buck) Tyler ("Mother") and Steven Vetor ("Father") are the biological parents of six-year-old Stephenie.[1] Father established paternity in 2011, and although Mother was originally granted primary physical custody of Stephenie, custody was modified and granted to Father in 2014. Thereafter, in March 2016, Mother filed an emergency petition for modification of custody, parenting time, and child support based upon Father's relocation from Anderson to Indianapolis. Mother claimed that Father failed to give her proper statutory notice of his intent to relocate and that modification of custody was warranted. Following a hearing, the trial court concluded that Father failed to give Mother proper statutory notice of his intent to relocate and ordered Father to pay Mother's attorney $600 in attorney's fees. However, the court found that custody modification was not warranted and therefore denied Mother's petition to modify. On appeal, Mother makes numerous claims that the trial court abused its discretion and/or committed reversible error. Finding no abuse of discretion or reversible error, we affirm.

# Facts and Procedural History

[2] Stephenie was born out of wedlock on April 30, 2010, to Mother and Father. On December 8, 2011, the trial court issued its order establishing paternity, and ordered that the parties would share joint legal custody of Stephenie, with

---

[1] On December 8, 2014, the trial court granted Father's petition for name change and Stephenie's last name was changed from Buck to Vetor. For simplicity, we will refer to her only as Stephenie.

Mother having primary physical custody. In June 2012, Mother relocated with Stephenie from Indiana to the state of Washington. Mother failed to provide advance notice of her relocation to Father, failed to provide him with her correct address, and failed to make arrangements for Father to have parenting time. Father objected to the relocation and filed a petition to modify custody. Following a contested hearing that finally occurred in January 2014, the trial court issued its order finding Mother in contempt and modifying primary physical custody of Stephenie to Father.

[3] Mother eventually moved back to Indiana, and on February 29, 2016, the trial court received a pro se request from Mother requesting a hearing based upon what she believed was Father's intent to relocate from Anderson to Indianapolis. The trial court referred the matter to a court facilitator to try to informally resolve the matter. The trial court ordered the parties to appear for a meeting with the facilitator on March 24, 2016, and indicated that "[f]ailure to appear or participate in the meeting may result in dismissal of the action." Appellant's App. at 29. Father was served with notice of the meeting, but Mother's notice was returned as not served. On March 22, 2016, Mother filed an emergency petition for modification of custody, parenting time, and child support. The facilitator meeting commenced on March 24, 2016. Mother failed to appear at the meeting. A hearing on Mother's petition to modify custody was scheduled for May 10, 2016. The order to appear issued to Father regarding the hearing indicates that it was served at an address listed as "Vacant." *Id*. at 11; Tr. at 4.

[4] The modification hearing was held as scheduled on May 10, 2016. Mother appeared with counsel. Father failed to appear. After reviewing the court record, the trial court determined that Father did not have actual notice of the hearing. The trial court permitted Mother to present evidence but determined that the matter should be continued and reconvened on a subsequent date when Father would be present. Mother did not object. Accordingly, the modification hearing was continued and reconvened on June 7, 2016. Mother again appeared with counsel, and Father appeared pro se at the hearing. Mother's counsel moved to incorporate the evidence presented at the prior hearing into the current hearing, and the trial court granted that motion.

[5] Regarding statutory notice, Father admitted that he failed to file statutory notice of his intent to relocate as required by Indiana Code Section 31-17-2.2-1, but stated that he sent Mother a text message informing her of his intent to move several weeks before he actually moved. Mother admitted that she was aware of Father's intent to move but stated that Father never gave her his new address. Father acknowledged that Mother objected to the relocation by filing a petition to modify custody and that he believed the issue would be resolved during the March 24, 2016, court-ordered mediation. However, Mother failed to attend the mediation.[2] Father stated that he spoke with the court facilitator about the move and that the facilitator advised him that "as long as it was I

---

[2] Mother maintains that she did not have notice of the mediation.

moved for a job that a Judge wouldn't object and uh pretty much I could go on since [Mother] didn't show up [for mediation]." Tr. at 38.

[6] Specifically regarding the relocation, Father testified that he took a job with the Marion County Jail that required him to live in Indianapolis. [3] He stated that he and his current wife moved from Anderson to a house in Indianapolis but that he continued to drive Stephenie to her current school in Daleville so as not to disrupt the school year. Father stated that Stephenie would attend a Wayne Township Elementary school the following school year. Father stated that Stephenie had struggled in kindergarten and would repeat kindergarten at the new school. Father testified that he believed that going to a new school would be in Stephenie's best interests so that she would not become discouraged by having to watch her current classmates "move up." *Id*. at 47. Father further stated that Stephenie felt positive about the move and going to a new school because "she didn't really like Daleville to begin with [because] bullying started." *Id*.

[7] Mother testified that she currently lives in Anderson with her new husband in a "possibly rent to own" house. *Id*. at 63. Mother stated that if custody was modified to grant her physical custody of Stephenie, Stephenie would attend a different elementary school than she is currently attending but that she would attend with one of her sisters. Mother also testified that Stephenie's

---

[3] Although the record indicates that Father changed jobs in May 2016, his job with the Marion County Jail apparently precipitated the original move to Indianapolis.

Grandmother lives down the street from Mother. Mother's testimony indicated that Father's relocation did not interfere with her relationship with Stephenie or impose any significant hardship upon the exercise of her parenting time with Stephenie.

[8] At the conclusion of the hearing, the trial court denied Mother's petition to modify custody. Specifically, the trial court's order stated:

> The Court finds that, although Father did give Mother some advance advisement of his intent to relocate to the Indianapolis area he did not adequately comply with the relocation notice requirement under Indiana law. On two prior occasions, Father had provided appropriate notice of his intent to relocate, although he had the assistance of Counsel at that time. As such, Father is aware of those requirements. Mother's concern was appropriate and she had visited upon her the expense of hiring Counsel to pursue her interests in regard to Father's failure to provide appropriate notice. As such, Father is ordered to pay Mother's attorney $600 as attorney fees payable at not less than $100.00 per month beginning July 15, 2016.

> The Court does not find that there has been a substantial and continuing change in circumstances sufficient to warrant a modification of custody. As such, the January 8, 2014 [order,] which awarded joint legal custody of the parties with primary physical custody to Father remains in effect. Mother shall continue to have such parenting time as the parties may agree, but in the event of disagreement, not less than the Indiana Parenting Time Guidelines.

> In addition to Father being admonished to comply with the notice of relocation requirements under Indiana Code in the future, both parties are admonished that they need to improve

their communication with each other for their daughter's best interest.

Appellant's App. at 13. This appeal ensued. We will provide additional facts in our discussion as necessary.

## Discussion and Decision

[9] We begin by noting that neither party requested that the trial court make specific findings of fact and conclusions thereon. "In the absence of special findings, we review a trial court decision as a general judgment and, without reweighing evidence or considering witness credibility, affirm if sustainable upon any theory consistent with the evidence." *Baxendale v. Raich,* 878 N.E.2d 1252, 1257 (Ind. 2008). We reiterate that if any evidence supports the judgment, we will not substitute our own judgment for that of the trial court. *Id.* at 1258.

[10] Moreover, we review the trial court's decision regarding the modification of child custody only for an abuse of discretion. *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993). Our preference for granting latitude and deference to our family-law trial judges is reinforced by the concern for finality in custody matters. *Baxendale*, 878 N.E.2d at 1258. Additionally, we accord this deference because trial courts directly interact with the parties and are in a superior position "to assess credibility and character through both factual testimony and intuitive discernment." *Best v. Best,* 941 N.E.2d 499, 502 (Ind. 2011). Conversely, appellate courts "are in a poor position to look at a cold

transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence." *Kirk v. Kirk,* 770 N.E.2d 304, 307 (Ind. 2002).

## Section 1 – The trial court did not abuse its discretion or commit reversible error in failing to enforce certain provisions of the Relocation Statute.

This case stems from Mother's petition to modify custody in response to Father's proposed, and then actual, relocation from Anderson to Indianapolis. Mother first argues that the trial court "committed reversible error by failing to enforce the provisions of [the Relocation Statute] Indiana Code Section 31-17-2.2-1." [4] Appellant's Br. at 21. Specifically, Mother complains that Father moved to Indianapolis prior to the initial May 10, 2016, hearing on her petition to modify custody and argues that the trial court abused its discretion in failing to enter at the conclusion of that hearing a temporary order restraining or

---

[4] Mother's first assertion is actually that the trial court committed reversible error "by failing to find that Father had notice of [the] first hearing" on her petition to modify. Appellant's Br. at 18. While her argument is difficult to discern, Mother appears to challenge the trial court's decision to continue and reconvene the modification proceedings due to Father's failure (based upon his alleged lack of notice) to appear at the first hearing. However, the trial court announced its decision to continue and reconvene the proceedings at the conclusion of the first hearing, and Mother did not object. Accordingly, she has waived our review of this issue. *See Bogner v. Bogner*, 29 N.E.3d 733, 740 (Ind. 2015) (noting that objections to the procedure used by the trial court not contemporaneously raised are waived on appeal).

permitting the relocation (or ordering return of the child) pursuant to Indiana Code Section 31-17-2.2-6.[5] We disagree.

[12] It is well settled that there are two ways for a nonrelocating parent to object to a proposed relocation: a motion to modify a custody order under Indiana Code

---

[5] That section, entitled "Orders restraining or permitting relocation of child," provides:

(a) If a nonrelocating parent files a motion under section 5 of this chapter, the court, after notice and an opportunity to be heard or after compliance with Trial Rule 65(B), may grant a temporary order restraining the relocation of a child or order the child to be returned to the nonrelocating parent if the court finds:

(1) that the notice required under IC 31-14-13-10 or this chapter was not served in a timely manner and the parties have not presented an agreement concerning the parenting time schedule;

(2) that the child has been relocated without:

(A) the appropriate notice;

(B) an agreement between the parties; or

(C) a court order; or

(3) from an examination of the evidence presented at the temporary hearing, that there is a likelihood that, after a final hearing, the court will not approve the relocation of the child.

(b) The court may grant a temporary order permitting the relocation of the child pending a final hearing if the court:

(1) determines that the notice required under IC 31-14-13-10 or this chapter was provided in a timely manner;

(2) issues an order for a revised schedule for temporary parenting time with the child; and

(3) reviews the evidence presented at the temporary hearing and determines that there is a likelihood that, after the final hearing, the court will approve the relocation of the child.

(c) If the court issues a temporary order authorizing the relocating individual to move, in its final judgment, the court must consider factors:

(1) other than; or

(2) in addition to;

the temporary relocation of the child when issuing a final order.

Section 31-17-2.2-1(b), or a motion to prevent the relocation of a child under Indiana Code Section 31-17-2.2-5(a). *Baxendale*, 878 N.E.2d at 1256 n.5. Here, Mother chose the former method to object to Father's proposed relocation. The record does not suggest that Mother ever specifically sought an order preventing relocation pursuant to Indiana Code Section 31-17-2.2-5, and such would have been a prerequisite to the trial court's consideration of and discretionary decision to grant a temporary order permitting or restraining relocation. *See* Ind. Code § 31-17-2.2-6. We cannot say that the trial court abused its discretion or committed reversible error in failing to independently enter a discretionary order or to grant relief that was never sought by Mother.

## Section 2 – The trial court properly considered the required statutory factors in denying Mother's petition to modify.

[13] Mother next asserts that the trial court failed to properly address and consider the required statutory factors in denying her petition to modify. When a party moves to modify custody in response to the proposed relocation of the other parent, the trial court must take certain factors into consideration. *Jarrell v. Jarrell,* 5 N.E.3d 1186, 1190 (Ind. Ct. App. 2014), *trans. denied.* Specifically, in considering a proposed relocation, the trial court must "take into account" the following factors:

> (1) The distance involved in the proposed change of residence.

> (2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.

(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

(A) relocating individual for seeking relocation; and

(B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

Ind. Code § 31-17-2.2-1(b). The "[o]ther factors affecting the best interest of the child" include the statutory factors relevant to an initial custody order or a modification of that order, such as the child's age and sex; the parents' wishes; the child's wishes; the child's interaction and interrelationship with parents, siblings, and other persons affecting the child's best interest; and the child's adjustment to home, school, and the community. Ind. Code § 31-14-13-2.[6]

---

[6] Indiana Code Section 31-14-13-2 provides the "best interests" factors for an initial custody determination following the establishment of paternity. While most of our case law references the almost identical language that appears in the general Family Law Article dealing with initial custody orders, Indiana Code Section 31-17-2-8, the parties appear to agree that the paternity provision applies here.

Prior to granting or denying a relocation-based petition to modify custody, the trial court is required to consider all the enumerated relocation factors listed in Indiana Code Section 31-17-2.2-1(b) *In re Marriage of Harpenau,* 17 N.E.3d 342, 347 (Ind. Ct. App. 2014).

[14] Mother's primary contention is that the trial court failed to consider the relocation factors in making its ruling. We acknowledge that the trial court did not specifically reference each of the enumerated relocation factors in its order denying Mother's request for modification. However, with respect to the trial court's general judgment, we presume that the trial court correctly followed the law, and this presumption is one of the strongest presumptions applicable to our consideration of a case on appeal. *See In Re H.M.C.*, 876 N.E.2d 805, 807 (Ind. Ct. App. 2007), *trans. denied* (2008). While the Relocation Statute does not require findings of fact, we observe that at a minimum there must be evidence in the record on each of the factors listed in Indiana Code Section 31-17-2.2-1(b). Our review of the record here indicates that the trial court did in fact properly consider evidence presented by the parties that was relevant to each of the relocation factors. There is ample evidence in the record regarding: (1) the minimal distance involved in Father's change of residence; (2) the minimal hardship and expense involved for Mother to exercise parenting time; (3) the feasibility of preserving the relationship between Mother and Stephenie; (4) that there is not an established pattern of conduct by Father to thwart Mother's contact with Stephenie; (5) that Father sought relocation due to his employment and that Mother opposed relocation due to concerns regarding education and

proximity to family; and (6) other factors affecting the best interest of Stephenie including her young age; her interaction and interrelationship with parents, siblings, and other persons affecting her best interest; and her adjustment to home, school, and the community. While we understand that Mother may disagree with the trial court's assessment of the weight of the evidence regarding each factor, her argument that the trial court failed to consider the relocation factors is without merit.[7]

[15] Mother maintains that even assuming that the trial court considered the relocation factors, it failed to also consider the original best interest factors pursuant to Indiana Code Section 31-14-13-2. Appellant's Br. at 27. Our supreme court has specifically addressed the statutory interplay between the relocation factors and the original best interest factors and cautioned that the Relocation Statute incorporates all of the original best interest factors, and adds some new ones. *Baxendale*, 878 N.E.2d at 1257. In other words, "the circumstances surrounding a relocation can create substantial changes for the child, including changes in the [original best interest factors] and also those provided by the relocation chapter." *Id*. at 1258.

[16] In denying Mother's petition to modify custody, the record indicates that the trial court considered both the relocation factors and the incorporated original best interest factors and specifically concluded that Mother did not meet her

---

[7] We note that Mother does not specifically address or challenge the weight of the evidence presented regarding each of the relocation factors, so neither do we.

burden to establish "that there has been a substantial and continuing change in circumstances sufficient to warrant a modification of custody" and that modification of custody was not in Stephenie's best interests. Appellant's App. at 13. On appeal, Mother simply points to evidence in the record that she contends demonstrates a substantial change in some of the original best interest factors. This is simply an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *Baxendale,* 878 N.E.2d at 1257. The evidence supporting the trial court's judgment indicates that Stephenie is well adjusted and well cared for by Father, and that Mother enjoys ample parenting time. There is no evidence that Father's relocation to Indianapolis has changed or will change any of these things. We remind Mother of the deference we give to our trial judges in family law matters and that in order to obtain a reversal of the denial of custody modification, it is not enough to show that the evidence might have supported modification; rather, the evidence must "positively require" modification. *Kirk*, 770 N.E.2d at 307. Mother has not met this high standard. We cannot say that the trial court abused its discretion in denying Mother's petition to modify custody.

## Section 3 – The trial court did not abuse its discretion in failing to find Father in direct contempt of court.

[17] As a final matter, Mother argues that the trial court abused its discretion in failing to punish Father by finding him in direct contempt of court for allegedly "repeatedly lying" to the court and "interfering with the business of the court." Appellant's Br. at 30. Mother's argument in this regard is misguided.

"Contempt of court generally involves disobedience of a court or court order that 'undermines the court's authority, justice, and dignity.'" *Reynolds v. Reynolds*, 64 N.E.3d 829, 832 (Ind. 2016) (citations omitted). Direct criminal contempt involves actions occurring near the court that interfere with the business of the court, and of which the judge has personal knowledge. *Troyer v. Troyer*, 867 N.E.2d 216, 220 (Ind. Ct. App. 2007). Any act which manifests as a disrespect and defiance of a court may constitute direct criminal contempt. *Id*. It is soundly within the trial court's discretion to determine whether a party is in contempt, as the trial court has the inherent power to maintain its dignity, secure obedience to its process and rules, rebuke interference with the conduct of business, and punish unseemly behavior. *Reynolds*, 65 N.E.2d at 832. The trial court's power of direct contempt is essential for the court to be able to protect itself against gross violations of decency and decorum as it pursues its justice. *Hopping v. State*, 637 N.E.2d 1294, 1296 (Ind. 1994) (citation and quotation marks omitted), *cert. denied*.

The trial court's inherent power to punish a party with a finding of direct contempt is just that: the trial court's power. If the trial court here felt that its authority, justice, and dignity had been undermined by Father, it had the discretion to act accordingly. It was by no means required to do so. Mother has shown no abuse of discretion. The judgment of the trial court is affirmed in all respects.

Affirmed.

Riley, J., and Altice, J., concur.