ATTORNEYS FOR APPELLANT
William N. Riley
Joseph N. Williams
James A. Piatt
Anne Medlin Lowe
Riley Williams & Piatt, LLC
Indianapolis, IN

Lonnie D. Johnson
Pamela J. Hensler
Michael J. Potraffke
Clendening Johnson & Bohrer, P.C.
Bloomington, IN

ATTORNEYS FOR APPELLEE
Thomas L. Davis
Darren A. Craig
Maggie L. Smith
Frost Brown Todd LLC
Indianapolis, IN

Steven J. Moss
Duke Energy Business Services, LLC
Plainfield, IN

_____

# In the
# Indiana Supreme Court



FILED
Dec 20 2017, 3:47 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

_____

No. 53S04-1703-CT-121

BELLWETHER PROPERTIES, LLC,

*Appellant (Plaintiff),*

v.

DUKE ENERGY INDIANA, INC.,

*Appellee (Defendant).*

_____

Appeal from the Monroe Circuit Court, No. 53C01-1506-CT-1172
The Honorable E. Michael Hoff, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 53A04-1511-CT-1880

_____

**December 20, 2017**

**Slaughter, Justice.**

Dismissal under Trial Rule 12(B)(6) is rarely appropriate when the asserted ground for dismissal is an affirmative defense. To withstand a 12(B)(6) dismissal, the complaint need only allege such facts that, if proved, would entitle the plaintiff to obtain relief from the defendant. A

complaint that survives that limited scrutiny states a claim for relief, even if there may lurk on the horizon an unassailable defense. Only where a plaintiff has pleaded itself out of court by alleging, and thus admitting, the essential elements of a defense does its complaint fail to state a claim on which relief can be granted. Here, the trial court found the statute of limitations had expired and dismissed the plaintiff's complaint with prejudice under Rule 12(B)(6). We hold the dismissal was premature because the face of the complaint did not establish that the asserted claim was time-barred. We thus reverse and remand.

## Factual and Procedural History

Plaintiff, Bellwether Properties, LLC, owns real property in Bloomington, Indiana. In 1957, the property's prior owner granted a utility easement—an "Electric Pole Line Easement"—to the predecessor in interest of Defendant, Duke Energy Indiana, Inc. The easement, which is perpetual and runs with the land, granted the utility the right to build, remove, and maintain electrical lines, including necessary poles and wires, for transmitting electricity over a ten-foot-wide strip of the property. Thus, the easement's burden on the property was no more than ten feet in width.

In 2002, the Indiana Utility Regulatory Commission adopted the 2002 edition of the National Electrical Safety Code. 26 Ind. Reg. 328-29 (November 1, 2002) (codified at 170 Ind. Admin. Code 4-1-26(b) (2004)). The Safety Code is published by the Institute of Electrical and Electronic Engineers, Inc., a private professional association. The Code establishes standards for safeguarding persons from hazards arising from "the installation, operation, or maintenance of overhead supply and communication lines." National Electric Safety Code, IEEE, 2002 at 59. The Commission did not reproduce the Safety Code's text within an administrative rule, but merely incorporated the Code by reference and advised that copies could be obtained from the Institute in New Jersey and the Commission in Indianapolis. 170 I.A.C. 4-1-26(b).

Of relevance here, the 2002 Safety Code establishes how close structures on the land can be to a utility's overhead lines. These minimum "strike" or lateral clearances vary with the types of lines and the amount of electrical current they carry. National Electric Safety Code, at 101-03. Table 234-1 of the Code provides that "Insulated communication conductors and cables; messengers; surge-protection wires; grounded guys; ungrounded guys exposed to 0 to 300 V;

2

neutral conductors meeting Rule 230E1; and supply cables meeting Rule 230C1" require 1.40 meters of horizontal clearance to walls, projections, and guarded windows. Id. And "[o]pen supply conductors, over 750 V to 22 kV" require 2.30 meters of horizontal clearance. Id.

In 2015, Bellwether brought an inverse-condemnation action alleging that Duke Energy's maintenance of its electrical line on Bellwether's property, in accordance with the Safety Code, imposes a 23-foot-wide easement—thirteen feet more than the easement permits. According to Bellwether, this additional burden effected a taking of its property for a public use requiring the payment of just compensation. Duke Energy responded by filing a motion to dismiss under Rule 12(B)(6), arguing that Bellwether's claim was time-barred under the applicable six-year statute of limitations. The trial court agreed and granted Duke's motion, concluding that Bellwether's claim was untimely because more than six years had passed since adoption of the Safety Code in 2002.

A divided Court of Appeals reversed. It held that Indiana's discovery rule tolled the running of the statute of limitations because "the circumstances here are too attenuated to conclude that the taking was ascertainable by Bellwether". Bellwether Properties, LLC v. Duke Energy Indiana, Inc., 59 N.E.3d 1037, 1046 (Ind. Ct. App. 2016) (footnote omitted). The dissent relied on our opinion in Tiplick v. State, 43 N.E.3d 1259 (Ind. 2015), in concluding that Bellwether "must be charged with knowledge" of the taking and that the trial court was correct to dismiss its complaint as untimely. 59 N.E.3d at 1051 (May, J., dissenting). Duke Energy then sought transfer, which we granted, thereby vacating the Court of Appeals' opinion. Like the Court of Appeals, we also reverse the trial court's dismissal, but do so on different grounds.

**Standard of Review**

A motion to dismiss under Rule 12(B)(6) "tests the legal sufficiency of the [plaintiff's] claim, not the facts supporting it." Thornton v. State, 43 N.E.3d 585, 587 (Ind. 2015) (citation omitted). Dismissals are improper under 12(B)(6) "unless it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief." State v. American Family Voices, Inc., 898 N.E.2d 293, 296 (Ind. 2008) (citations omitted). This Court reviews a 12(B)(6) dismissal de novo, giving no deference to the trial court's decision. Veolia Water Indianapolis, LLC v. Nat'l Trust Ins. Co., 3 N.E.3d 1, 4 (Ind. 2014). In reviewing the complaint, we take the alleged facts to be true and

consider the allegations in the light most favorable to the nonmoving party, drawing every reasonable inference in that party's favor. Id. at 4-5.

## Discussion and Decision

**I.      Dismissal under Trial Rule 12(B)(6) was improper because the limited record here does not establish when Bellwether's cause of action accrued.**

The trial court dismissed Bellwether's complaint with prejudice under Rule 12(B)(6) after concluding "the [six-year] statute of limitations provides a complete defense to [the] complaint." The court premised the dismissal on its determination that "any amendment of the complaint pursuant to Trial Rule 12(B) would not change that underlying fact."

A 12(B)(6) motion to dismiss tests the complaint's legal sufficiency. A complaint states a claim on which relief can be granted when it recounts sufficient facts that, if proved, would entitle the plaintiff to obtain relief from the defendant. The plaintiff "need not anticipate a statute of limitations defense and plead matter[s] in avoidance in the complaint." Nichols v. Amax Coal Co., 490 N.E.2d 754, 755 (Ind. 1986) (adopting statement of Judge Ratliff, who dissented from denial of rehearing in Nichols v. Amax Coal Co., 482 N.E.2d 776, 778 (Ind. Ct. App. 1985)). Thus, a complaint does not fail to state a claim merely because a meritorious defense may be available. But a plaintiff may plead itself out of court if its complaint alleges, and thus admits, the essential elements of a defense. An example is where the "complaint shows on its face that the statute of limitations has run". 490 N.E.2d at 755 (same).

The face of Bellwether's complaint does not establish that the statute of limitations had run on its inverse-condemnation claim. Duke Energy argues the claim accrued by operation of law when the Commission adopted the 2002 edition of the National Electric Safety Code. According to Duke Energy, the 2002 Safety Code unambiguously expanded the required safety clearance beyond the ten feet allowed by the 1957 utility easement on Bellwether's property and thereby effected a taking immediately upon the Safety Code's incorporation into the administrative code. Bellwether counters that the claim did not accrue until the Safety Code expanded the easement, and that the expansion was not automatic but occurred only when there was a sufficiently high voltage associated with Duke Energy's operation of its electrical lines.

4

Bellwether's claim accrued, conceptually, when the regulatory burden on its property exceeded the ten-foot clearance permitted by the original easement. At this stage, all we know factually is what the complaint alleges, which is that Duke Energy's maintenance of the electrical lines "currently" imposes a total burden of 23 feet—thirteen feet more than the easement authorized. The complaint does not recite *when* the additional burden first occurred, only that it was in effect when Bellwether filed its complaint in August 2015. Given the limited factual allegations, we cannot discern whether (or when) any additional burden on Bellwether, beyond the 1957 easement restriction, occurred by operation of law. Because the complaint does not establish that the statute of limitations had already run when Bellwether sued, Duke Energy jumped the gun by arguing the claim's untimeliness in a motion to dismiss. Based on the current record, we are unable to conclude that Bellwether's allegations would not entitle it to relief against Duke Energy under any circumstances. We thus reverse the trial court's judgment dismissing Bellwether's complaint with prejudice.

**II.    All persons are charged with knowing the law, but the law must be reasonably accessible to those having to obey it.**

Rather than concluding our opinion here, we elect to raise an additional issue *sua sponte* that the parties and the trial court may wish to consider on remand: whether the 2002 Safety Code was reasonably accessible to Bellwether.

A longstanding legal principle presumes that citizens know the law and must obey it—on pain of losing their lives, liberty, or property for noncompliance. "[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). An ancient legal maxim, phrased in the obligatory Latin (*ignorantia juris non excusat*), admonishes that ignorance of the law is no excuse. See Cotton v. Commonwealth Loan Co., 206 Ind. 626, 632, 190 N.E. 853, 856 (1934). But central to the presumption that persons know the law is that the law is accessible.

> It is a maxim of universal application that every man is presumed to know the law, and it would seem inherent that freedom of access to the laws, or the official interpretations of those laws, should be coextensive with the sweep of the maxim. Knowledge is the only just condition of obedience. The laws of Rome were written on tablets and posted, that all might read, and all were bound to obedience.

Ex parte Brown, 166 Ind. 593, 611, 78 N.E. 553, 559 (1906) (citation omitted). If the rule of law means anything, it is that persons have meaningful access to the laws they are obliged to follow, so they can conform their conduct accordingly.

**A.      The practice of incorporating extrinsic materials by reference often includes privately published standards that are copyright-protected.**

Over the last fifty years, a trend has emerged nationally allowing extrinsic materials to be included in statutory and administrative codes. See Memorandum from Attorney General Ramsey Clark to the Executive Departments and Agencies Concerning Section 3 of the Administrative Procedure Act as Revised Effective July 4, 1967 (June 1967) (available at https://www.justice.gov/oip/attorney-generals-memorandum-public-information-section-adminis-tive-procedure-act#amendments) (discussing Public Law 89-487, 80 Stat. 250) (last visited on Dec. 19, 2017). These materials are often incorporated by reference, meaning they are not reproduced within the codes themselves. Indiana has authorized this practice since 1985. 1985 Ind. Acts 298-99. The incorporated materials usually include not only state and federal statutes and regulations, but also privately developed standards, written by various industry and professional groups, that are often beyond the technical expertise of government officials. "Contemporary production of legal materials relies significantly and increasingly on private-sector standard setters, whose products are embodied in law by legislatures, regulators, courts, and other governmental authorities." Lawrence A. Cunningham, *Private Standards in Public Law: Copyright, Lawmaking and the Case of Accounting*, 104 Mich. L. Rev. 291, 296 (2005) (footnote omitted).

This kind of rulemaking by proxy has undeniable advantages. It saves governments from having to hire policy experts to craft these standards. The process of developing these standards is often more streamlined because private actors are not subject to the same regulatory hurdles, such as a notice-and-comment rulemaking process. See Emily S. Bremer, *Incorporation by Reference in an Open-Government Age*, 36 Harv. J.L. & Pub. Pol'y 131, 140 (2013). And before widespread use of the internet, incorporation by reference allowed rulemaking bodies to save significant printing costs, as they made their codes shorter by not having to reprint the full text of the incorporated standard.

But the practice of incorporating private standards by reference comes at a cost. The cost may be negligible for regulations that incorporate federal statutes, regulations, and other open-source

materials, much of which can now be viewed online for free with just a few extra mouse clicks. But regulations incorporating copyrighted materials are often practically unavailable without the accompanying text, which can be difficult and expensive to obtain.

### B. Does incorporation by reference of copyright-protected materials provide meaningful access to laws today?

In November 2002, the Commission published its final rule in the Indiana Register adopting an amendment to Indiana's Administrative Code that incorporated the 2002 Safety Code by reference. This amendment was available for free online in the Indiana Register, but the Safety Code was not. See 26 Ind. Reg. 328-29 (November 1, 2002). The online amendment advised that copies of the Safety Code could be obtained from the Institute of Electrical and Electronics Engineers, Inc., in Piscataway, New Jersey, and from the Commission's office in Indianapolis. Id.

Just as the Safety Code must be accessible to persons charged with following it, so too must it be available to courts faced with legal disputes concerning it. The parties did not include a copy of the Safety Code as part of the record on appeal. So we undertook to obtain our own copy—and not without difficulty. One of our employees telephoned the Commission's office in Indianapolis. Our employee identified herself to the Commission representative by name and title and asked about obtaining a copy of the Code, which turns out to be hundreds of pages long. The Commission's representative told our employee she could make an appointment to come in during office hours to *inspect* the Code. But the representative advised that the Commission does not make copies of the Code available for purchase, and that our employee could not check out the Code for copying elsewhere, because of restrictions imposed by the publisher. Our employee did not challenge these instructions, but merely noted them and reported back what she had been told.

These "facts" obviously are not part of the record. They represent the experience of one person contacting the Commission's office on one occasion fifteen years after the Commission incorporated the 2002 Safety Code by reference. Our employee's unsuccessful effort to obtain a copy of the Code from the Commission may be a one-off. But if it happened once, it is not inconceivable it happened before. And if it did, a fair question is whether the practice recurs in accordance with Commission policy.

We eventually obtained a copy of the 2002 Safety Code through this website: https://ia600704.us.archive.org/16/items/gov.law.ieee.c2.2002/ieee.c2.2002.pdf (last visited on Dec. 19, 2017). We do not know when the Code was first made available online, or whether the copy we are working from is the same edition that was incorporated in 2002. We note that our copy says it is copyright-protected, but that the Institute has specifically authorized governments to republish its content. "Public authorities are granted permission to republish the material herein in laws, regulations, administrative orders, ordinances, or similar documents." National Electric Safety Code, IEEE, 2002 at i.

Given this authorization to republish the Code's content, we do not know why the Commission does not make this material readily available on its website today. Incorporation by reference of copyright-protected materials may have made sense in an era when statutory and administrative texts were printed in bound volumes at significant expense. Allowing agencies to incorporate extrinsic materials by reference spared them the cost of printing what are often voluminous materials. But that practice has little justification today, given the pervasive use of the internet. Indeed, our Legislative Services Agency discontinued issuing printed volumes of the Indiana Administrative Code beginning in 2005 and the Indiana Register beginning in 2006. Now the official versions of these publications are available only online. In light of prevailing technology, incorporating copyright-protected materials by reference seems antiquated and at odds with government's obligation to provide meaningful access to laws.

To be clear, we do not prejudge that outcome or foreordain that result here. Legal determinations often turn on concrete facts. And we do not purport to answer the factual questions we have posed rhetorically that may bear on the Code's accessibility to Bellwether during the time Duke Energy claims the statute of limitations was running. We merely note them as a non-exhaustive list of issues that may warrant further consideration and development on remand.

### C.      Tiplick v. State **does not govern here.**

Finally, our decision in Tiplick v. State, 43 N.E.3d 1259, does not supply the rule of decision here. In Tiplick, we rejected a due-process argument that Indiana's synthetic-drug statute was impermissibly vague in defining what conduct was criminally prohibited. The defendant described the prohibitions as a "statutory maze" preventing persons of ordinary intelligence from discovering

what was banned. We rejected that characterization and concluded the relevant statutes adequately put persons on notice of proscribed conduct concerning the manufacture and sale of synthetic drugs because the legislature provided a "confined universe of investigation." Id. at 1264. "This is not a 'maze'", we held, "but rather a chain with three links—three discrete statutes which give clear guidance as to how to find everything falling within the definition of 'synthetic drug'[.] … Such a statutory scheme is not unduly vague." Id.

Tiplick's significance extends beyond its specific holding concerning the synthetic-drug statute. Its analysis and rationale apply to any statutory and regulatory scheme within the public domain. But the potential problem we foresee with the 2002 Safety Code is not a Tiplick issue. Our concern here is not that the Safety Code is too complex or requires consultation with too many legal sources, but that the Code may not be accessible to those whose property interests it implicates, now that it has been adopted by a state regulatory agency and purports to carry the force of law. Tiplick, in other words, does not address the threshold question here, which is whether the Safety Code was sufficiently in the public domain during the relevant time that Bellwether can be charged with knowing it. The answer is not apparent from the bare factual record before us.

### Conclusion

For these reasons, we reverse the trial court's judgment dismissing Bellwether's complaint with prejudice and remand for further proceedings not inconsistent with this opinion.

Rush, C.J., and David, Massa, and Goff, JJ., concur.

9