FILED

Oct 31 2019, 5:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANTS

Alice M. Morical
Michael A. Dorelli
Patrick A. Ziepolt
Hoover Hull Turner LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

R. Brock Jordan
Christopher M. Trapp
Katz Korin Cunningham PC
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Christopher J. McElwee and
Monday McElwee Albright
f/k/a Monday Jones Albright,
Attorneys at Law,

*Appellants-Defendants,*

v.

Michael Fish,

*Appellee-Plaintiff.*

October 31, 2019

Court of Appeals Case No.
18A-CT-2664

Appeal from the Marion Superior
Court

The Honorable Gary L. Miller,
Judge

Trial Court Cause No.
49D03-1803-CT-8543

**Sharpnack, Senior Judge.**

## Statement of the Case

[1]     Christopher J. McElwee and Monday McElwee Albright (formerly known as
Monday Jones Albright), Attorneys at Law (collectively "McElwee"), appeal

the denial of their motion to dismiss a complaint filed by Michael Fish ("Fish"), that challenged the distribution of surplus tax funds to which Fish believes he is entitled. We reverse and remand with instructions.

## Issue

[2] McElwee presents two issues, which we consolidate and restate as the following question: Did Fish's complaint assert any claims that were not barred by the applicable statute of limitations?

## Facts and Procedural History

[3] Fish obtained a mortgage on properties owned by 2444 Acquisitions, LLC ("Acquisitions"). In early March 2011, Fish filed a mortgage foreclosure action against Acquisitions and others in Marion Superior Court under cause number 49D07-1103-MF-10806. McElwee represented Acquisitions in the foreclosure action and in further related proceedings. In July 2011, a default judgment of foreclosure and agreed entry was entered against Acquisitions and in favor of Fish in the principal amount of $263,308.73 plus interest, and foreclosed Fish's mortgages on various parcels of real estate owned by Acquisitions.

[4] On January 24, 2012, Fish filed a praecipe for sheriff's sale. He filed his motion for proceedings supplemental on February 23, 2012. On March 5, 2012, Acquisitions filed a Chapter 11 petition for bankruptcy.

[5] Fish moved to dismiss the bankruptcy petition in April 2012. As grounds for the motion, Fish cited 11 U.S.C. § 1112 (2010), arguing that there was gross

mismanagement of the estate[1] and a lack of good faith in the filing of the petition. The bankruptcy court held an evidentiary hearing in June 2012, during which Acquisitions conceded that James Chalfant, the initial managing member of Acquisitions, lacked the requisite corporate authority to sign the bankruptcy petition on behalf of Acquisitions. Based on that concession, the bankruptcy court granted the motion to dismiss the petition pursuant to 11 U.S.C. §1112(b) on July 31, 2012.

[6] The litigation then returned to the foreclosure court. Fish again filed a praecipe for sheriff's sale on March 5, 2014. The next day, Acquisitions filed a new, second, Chapter 11 bankruptcy petition under cause number 14-01578-RLM-11 in the United States Bankruptcy Court, Southern District of Indiana, Indianapolis Division. Meanwhile, prior to the filing of the second bankruptcy petition two of the parcels of real estate had been sold at a tax sale. Acquisitions failed to redeem those parcels, and they were lost to a third party. The tax sale, however, produced surplus funds, which were placed into the statutory tax sale surplus fund.[2]

[7] During the pendency of the second bankruptcy petition, Acquisitions sought relief from the judgment in the foreclosure action pursuant to Indiana Trial Rule 60(B). Acquisitions argued that the judgment was void due to a failure to

---

[1] 11 U.S.C. § 1112(b)(4)(B).

[2] Ind. Code § 6-1.1-24-7(a)(3) (2012).

name a necessary party. The foreclosure court granted Acquisitions' request in February 2015. Fish appealed, a panel of this Court reversed the foreclosure court's decision, and our Supreme Court denied transfer of the case on March 21, 2016. *Fish v. 2444 Acquisitions, LLC*, 46 N.E.3d 1261 (Ind. Ct. App. 2015), *trans. denied*.

[8] On June 25, 2014, the United States Trustee filed a motion to convert the bankruptcy from a Chapter 11 bankruptcy proceeding to a Chapter 7 bankruptcy proceeding or dismiss the petition. Appellee's App. Vol. 2, pp. 139-141.[3]

[9] On September 19, 2014, Fish filed an adversarial complaint for the turnover of property in the second bankruptcy proceeding under cause number 14-50173, seeking to recover the tax sale surplus funds. Fish also named the Marion County Treasurer and the Marion County Auditor as parties to the adversarial complaint.

---

[3] In his opening brief, McElwee asked this Court to "take judicial notice of these bankruptcy, orders and motions, which were presented in whole or in part to the trial court." Appellants' Br. p. 10. McElwee noted that Fish had also requested that the trial court take judicial notice of the bankruptcy docket. *Id.* at 10-11. In Fish's Appellee's Brief, he asked this Court to take judicial notice of the chronological case summaries, and orders of the Bankruptcy Court, Foreclosure Court and prior appeals from the Foreclosure Action; portions of the transcript of the February 26, 2016 hearing in the Bankruptcy Court; and, pleadings and other filings made in all of the previous litigation. Appellants' Br. p. 10, n.2. In McElwee's Reply Brief, he notes that volume three of his appendix and volumes two and three of Fish's appendix contain documents from other litigation between Fish and Acquisitions. McElwee notes that many of Fish's documents were not submitted to the trial court. Reply Br. p. 8. However, McElwee explicitly states that it is not requesting this Court to strike any portion of those appendices. *Id.* McElwee argues that this Court can resolve the issue presented without having to use those extraneous materials. To the extent that we cite to any of those materials, we do so to provide a chronological history of the events leading up to the current appeal.

[10] On January 20, 2015, the United States Bankruptcy Court, Southern District of Indiana, Indianapolis Division, issued an order as follows:

> the Marion County Auditor is ordered to turn over the tax sale proceeds to Christopher J. McElwee, counsel for Debtor. The funds shall be made payable to '2444 Acquisitions, LLC' c/o Christopher J. McElwee, 1915 Broad Ripple Ave., Indianapolis, IN 46220. The funds shall be deposited into Debtor's counsel's trust account and held until further order of the Court. Upon issuance of payment, counsel for the Marion County Auditor shall file a 'Notice of Released Funds', after which the Marion County Auditor and Treasurer shall be dismissed from the case.

Appellants' Br. p. 10. On January 29, 2015, the Marion County Auditor transferred the funds to McElwee, who then deposited the funds in the firm's trust account.

[11] On July 15, 2015, the United States Trustee filed an emergency motion to convert or dismiss the case. Appellee's App. Vol. 2, pp. 142-144.

[12] Referring to both the cause number in the second bankruptcy and the cause number for the adversarial proceeding in the caption, Fish moved to dismiss the bankruptcy proceeding on February 3, 2016. The bankruptcy proceeding was dismissed on February 26, 2016, on Fish's and the Trustee's motions.

[13] At the February 26, 2016 hearing, the bankruptcy court stated as follows:

> Well, let me tell you where we sit today 23 months after filing. It was projected to, when the case was filed, that we have, we were supposed to have profit at this point of $58,928. . .In fact our cash profit to date is negative $1,628. Our actual average monthly

profit over the life of this has been 70, losing $70 a month. It's over almost two years. Our average is that we lose $70 a month. This is not reorganizing a business. This isn't even resuscitating a business. This is just really a slow death here and that's not fair to any of the creditors.

Appellants' App. Vol. 3, pp. 56-57.

In explanation of the court's order issued after the hearing, the following exchange occurred at the February 26, 2016 hearing between the bankruptcy court, McElwee, and Fish's counsel:

| THE COURT: | It's not even the long run to the advantage of the debtor, I wouldn't think. You [sic] got to get out of here and cut your losses at this point, would be my advice. So I'm going to grant the motion to dismiss, both of them and we'll dismiss the case. |
| --- | --- |
| [MCELWEE]: | A question, Your Honor? |
| THE COURT: | Yes? |
| [MCELWEE]: | What's, what is the, just procedurally, the Court issued an order today regarding the adversary and Mr. Pazmino[4] - - |
| THE COURT: | It goes away. |
| [MCELWEE]: | Okay. |

[4] According to evidence presented in a prior appeal of this dispute, Fish transferred the mortgage to Indianapolis Restaurant Ventures, LLC ("IRV), prior to 2011. Fish indicated that he owned forty percent of IRV and the Ruben Pazmino family trust owned sixty percent of IRV. *See Fish v. 2444 Acquisitions, LLC*, 46 N.E.3d at 1263.

|  |  |
|---|---|
| THE COURT: | Am I correct?  Do you have a need for an opinion?  Okay. |
| [FISH]: | Your honor, I'd just like to address the Court.  In light of Your Honor's ruling, we have a situation where Your Honor put Mr. McElwee under a court order with respect to keeping over $100,000 in his trust account.  In light of the circumstances, we'd like an order for that money to be immediately- - |
| THE COURT: | Case is dismissed.  I don't have jurisdiction. |
| [FISH]: | Okay.  All right. |

*Id.* at 57-58.

[15]   Next, on March 1, 2016, the bankruptcy court issued an order stating:  "With no [C]hapter 11 pending, the Court finds that this adversary proceeding should likewise be dismissed."  *Id.* at 85-86.  No order was ever issued by the bankruptcy court deciding the ownership or directing the distribution of the surplus tax sale funds held in McElwee's trust account.

[16]   However, on February 26, 2016, McElwee used a portion of the surplus tax funds held in the trust account to satisfy outstanding legal fees owed to McElwee by Acquisitions.  The remaining funds were then distributed by McElwee to Acquisitions.

[17]   On February 29, 2016, McElwee sent an email to Fish's appellate counsel advising that the funds had been distributed to Acquisitions the prior Friday, February 26, 2016, after Fish and the Trustee had succeeded in having the bankruptcy case dismissed.

[18]     On March 24, 2016, the foreclosure court's chronological case summary ("CCS") noted the decision of this Court and that the Indiana Supreme Court had denied transfer in the case. Appellee's App. Vol. 2, p. 10. The effect of those decisions was the reinstatement of Fish's judgment against Acquisitions and the same was noted in the CCS. *Id.*

[19]     On March 29, 2016, Fish filed a combined motion for the turnover of the funds from the tax surplus sale and for an order preserving the status quo. On May 9, 2016, the foreclosure court entered an order stating in pertinent part as follows:

> 5.     As a matter of Indiana law, [Fish] has a substantial interest in said aforementioned properties; [Acquisitions] has no entitlement to those funds; and equity requires disbursement of the tax surplus finds[sic] to the Plaintiff.

*Id.* at 39.

[20]     Acquisitions appealed the foreclosure court's order. A panel of this Court affirmed the trial court's decision ultimately concluding that "[a]s Fish has a more substantial interest in the tax sale surplus funds than 2444 Acquisitions, we find that equity requires the disbursement of the funds to Fish." *2444 Acquisitions, LLC v. Fish*, 84 N.E.3d 1211, 1216 (Ind. Ct. App. 2017). This Court further held that Fish's claim in the foreclosure court was not collaterally estopped as there had been no final adjudication as to the ownership of the tax sale surplus funds in the bankruptcy court. *Id.* at 1216-17.

On March 1, 2018, after the other actions and appeals had been finally adjudicated, Fish filed the complaint in this case against McElwee asserting claims for breach of fiduciary duties and a tort claim for negligence. Those claims alleged as follows:

> 18. The deposit of the tax sale surplus funds into McElwee's trust account triggered McElwee's duty to act as a depositary, depositary in escrow, and/or escrow agent. These duties include:
>
> a. McElwee's duty to safekeep the tax sale surplus funds;
>
> b. McElwee's duty to act with due care regarding the tax sale surplus funds; and
>
> c. McElwee's duty to exercise ordinary skill and diligence regarding the tax sale surplus funds.
>
> 19. Additionally, McElwee's status as a depositary of the tax sale surplus funds created a fiduciary relationship between McElwee and both Fish and 2444, as parties with an interest in the tax sale surplus funds.
>
> 20. Further, McElwee held the tax sale surplus funds in connection with his status as an attorney and legal representative for 2444. Therefore, the deposit of the tax sale surplus funds into McElwee's trust account triggered the additional following duties:
>
> a. McElwee's duty to safeguard the property of clients or third persons;
>
> b. McElwee's duty to hold property of others with the care required of a professional fiduciary;
>
> c. McElwee's duty to refuse to surrender property to his client until clams relating to the tax sale surplus funds are resolved; and

d. McElwee's duty to file an action to resolve any disputes regarding the tax sale surplus funds.

(Ind. Professional Conduct Rule 1.15).

Appellants' App. Vol. 2, pp. 18-19.

[22] With respect to the breach of fiduciary duty claim, Fish alleged as follows:

> 21. The Bankruptcy Court dismissed the Adversary Proceedings on or about March 1, 2016.
>
> 22. Prior to the Bankruptcy Court's dismissal of the Adversary Proceedings, McElwee distributed the tax sale surplus funds to 2444.
>
> 23. McElwee distributed the tax sale surplus funds to 2444 without first providing notice to Fish or his representatives. Accordingly, Fish was unable to object to this distribution or seek the assistance of the Bankruptcy Court or the court in the Foreclosure Action prior to this distribution occurring.
>
> 24. Fish first received notice of McElwee's distribution of the tax sale surplus funds to 2444 on February 29, 2016 when McElwee sent an e-mail to Fish's appellate counsel.
>
> 25. In McElwee's February 29, 2016 e-mail, he declared "[t]he funds were distributed to 2444 last Friday after Mr. Fish had the bankruptcy case dismissed" (referring to Friday, February 26, 2016).
>
> 26. February 29, 2016 is the date upon which Fish discovered McElwee's conduct. Accordingly, pursuant to Indiana's discovery rule, the causes of action contained herein did not accrue any earlier than this date.
>
> 27. Upon information and belief, McElwee's conduct occurred within the scope of his employment with the Firm or as a partner and/or agent of the Firm.

28. Fish incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs 1 through 27 of his complaint.

29. At all times after the deposit of the tax sale surplus funds, McElwee knew 2444 and Fish were asserting conflicting claims to these funds, as demonstrated by various pleadings filed in the Foreclosure Action, the bankruptcy proceedings, and the Adversary Proceeding.

30. When the tax sale surplus funds were deposited into McElwee's trust account, McElwee assumed various duties owing to Fish, as detailed above. (*supra* ¶¶ 18-20).

31. McElwee breached his fiduciary duties when he transferred the tax sale surplus funds to 2444 on or about February 26, 2016.

32. Specifically, McElwee breached his fiduciary duties by failing to:

a. hold the tax sale surplus funds with the care of a professional fiduciary;

b. safekeep the tax sale surplus funds;

c. act with due care regarding the tax sale surplus funds; and

d. exercise ordinary skill and diligence regarding the tax sale surplus funds.

33. McElwee further breached his fiduciary duties by failing to:

a. safeguard the property of clients or third person;

b. hold property of others with the care required of a professional fiduciary;

c. refuse to surrender property to his client until claims relating to the tax sale surplus funds are resolved; and

d. file an action to resolve any disputes regarding the tax sale surplus funds.

34. As a direct and proximate result of McElwee's breaches of his fiduciary duties, Fish has been harmed in an amount to be proven at trial, but in any event not less than the amount of the tax sale surplus funds that were improperly transferred to 2444 instead of Fish.

35. By operation of law, the Firm is liable for McElwee's actions.

*Id.* at 19-21.

With respect to the negligence claim, Fish alleged as follows:

36. Fish incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs 1 through 27 of his complaint.

37. McElwee owed one or more duties to Fish to refrain from disbursing the tax sale surplus funds to 2444. This duty arose from various sources including but not limited to: (i) the Turnover Order; (ii) McElwee's fiduciary obligations; (iii) McElwee's escrow obligations; and (iv) statutory obligations as McElwee stepped into the shoes of the Auditor and/or Treasurer upon receipt of the tax sale surplus funds.

38. McElwee breached one more of these duties by negligently distributing the tax sale surplus funds to 2444.

39. As a direct and proximate result of McElwee's negligence, Fish has been harmed in an amount to be proven at trial, but in any event not less than the amount of the tax sale surplus funds that were improperly transferred to 2444 instead of Fish.

40. By operation of law, the Firm is liable for McElwee's actions.

*Id.* at 21-22.

[24] An amended complaint was filed on June 12, 2018, containing the original allegations and added claims including a demand for an accounting, unjust enrichment, constructive trust and an allegation of money had and received.

[25] With respect to Fish's claim of demand for accounting, he alleged:

> 41. Fish incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs 1 through 27 of his complaint.
>
> 42. On or about January 29, 2015, McElwee deposited the tax surplus funds into his trust account, which triggered a fiduciary relationship between McElwee and Fish.
>
> 43. McElwee and/or the Firm exercised control over the trust account and tax sale surplus funds.
>
> 44. With respect to the trust account and the tax sale surplus funds, McElwee and/or the Firm were and are in a dominant position in the fiduciary relationship with Fish.
>
> 45. On September 26, 2017, the Indiana Court of Appeals held that Fish's interest in the tax surplus funds had priority over the interest of 2444. *2444 Acquisitions, LLC v. Fish*, 84 N.E.3d 1211, 1215-16 (Ind. Ct. App. 2017), *trans. denied* 46 N.E.3d 1240 [sic].
>
> 46. Since January 29, 2015, there have been transactions involving the tax sale surplus funds, including but not limited to compensation to McElwee and/or the Firm for fees and expenses and disbursement to 2444.
>
> 47. An accounting is necessary in order to establish the amounts paid to McElwee, the Firm, and 2444.

*Id.* at 29-30.

Fish's claim for unjust enrichment/quantum meruit, alleged as follows:

> 48. Fish incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs 1 through 27 of his complaint.
>
> 49. As discussed *supra* ¶ 44, Fish's interest in the tax sale surplus funds was and is superior to 2444's interest.
>
> 50. Fish expected payment of the tax sale surplus funds.
>
> 51. For the period January 29, 2015[sic] to present, McElwee transferred a certain amount of the tax sale surplus funds to himself and/or the Firm thereby providing a benefit to McElwee and/or the Firm.
>
> 52. Allowing McElwee and/or the Firm to retain the tax sale surplus funds without restitution or recovery would be unjust.
>
> 53. McElwee knew that distributions of the tax sale surplus funds were and are subject to disgorgement as demonstrated by the language of the Turnover Order and pursuant to the various duties McElwee assumed.

*Id.* at 31.

As for Fish's claim of constructive trust and constructive fraud, he alleged as follows:

> 54. Fish incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs 1 through 27 of his complaint.
>
> 55. McElwee owed various duties to Fish with respect to the tax sale surplus funds in connection with the fiduciary relationship between McElwee and Fish.

56. McElwee also owed certain duties to Fish with respect to the tax sale surplus funds and in connection with McElwee's status as a depositary.

57. At all times after the deposit of the tax sale surplus funds, McElwee knew 2444 and Fish were asserting conflicting claims to these funds, as demonstrated by various pleadings filed in the Foreclosure Action, the bankruptcy proceedings, and the Adversary Proceeding.

58. McElwee is and was subject to both ethical and equitable duties to safeguard the tax sale surplus funds and to keep the tax sale surplus funds separate until any dispute between 2444 and Fish regarding the tax sale surplus funds was resolved.

59. As the fiduciary and/or depositary, McElwee occupied a dominant position in his relationship with Fish.

60. McElwee violated one or more duties he owed to Fish by, *inter alia*, failing to provide notice to Fish and an opportunity to object prior to McElwee's distribution of the tax sale surplus funds to 2444, McElwee and/or the Firm.

61. Specifically, McElwee remained silent prior to the distribution of the tax sale surplus funds despite having a duty to inform Fish before the transfer occurred.

62. Fish relied on McElwee to safeguard the tax sale surplus funds.

63. Fish also relied on McElwee, as an attorney subject to his professional obligations and duties, regarding their relationship of trust and confidence as to the tax sale surplus funds.

64. McElwee used his status as fiduciary and depositary to control and/or transfer the tax sale surplus funds.

65. McElwee transferred certain funds to 2444 and the Firm and/or himself.

66.  As a direct and proximate result of McElwee's breach of his various duties by wrongfully distributing the tax sale surplus funds, Fish has suffered an injury in an amount to be proven at trial, but in any event not less than the amount of the transferred funds.

67.  Alternatively, or additionally, McElwee's conduct constitutes constructive fraud because his conduct has violated the public or private confidence in attorneys' duties to safeguard property which two or more persons claim interests.

68.  Alternatively, or additionally, McElwee's conduct constitutes constructive fraud because his conduct injures public interests in attorneys safeguarding property of which two or more persons clam interests.

69.  McElwee breached his professional, fiduciary and/or depositary duties owed to Fish.

70.  To the extent McElwee transferred any of the tax sale surplus funds to himself or the Firm, McElwee and/or the Firm have been unjustly enriched or have secured an unconscionable advantage if permitted to retain the tax sale surplus funds.

71.  By reason of said constructive fraud, McElwee and/or the Firm took and now hold the tax sale surplus funds in a constructive trust for Fish and Fish's property.

*Id.* at 32-33.

In his claim for action for money had and received, Fish alleged as follows:

72.  Fish incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs 1 through 27 of his complaint.

73.  As discussed *supra* ¶ 17, McElwee received the tax sale surplus funds and deposited said funds into his trust account.

74. McElwee transferred a certain amount of the tax sale surplus funds to himself and/or the Firm as attorney fees incurred by 2444.

75. As discussed *supra* ¶ 45, Fish's interest in the tax sale surplus funds was and is superior to 2444's interest and Fish should not be required to pay for 2444's attorney's fees.

76. Under circumstances in equity and good conscience, McElwee and/or the Firm should not be allowed to retain any of the tax sale surplus funds.

*Id.* at 34.

[29] McElwee filed a motion to dismiss the complaint and attached twelve exhibits in support of the motion. Fish filed a motion to strike and an alternative request for additional time to respond and conduct discovery. Fish sought to exclude the exhibits as improper under Indiana Trial Rule 12(B). The trial court granted the motion and struck the attached exhibits. The trial court also allowed McElwee to file an appropriate responsive pleading to the amended complaint within ten days of the order. McElwee filed an amended motion to dismiss to which Fish responded.

[30] McElwee's amended motion to dismiss alleged that Fish's negligence and breach of fiduciary duty claims were barred by the statute of limitations. Apellants' App. Vol. 2, pp. 71-81. McElwee argues that Fish learned about the injury on February 29, 2016, but did not file his complaint until March 1, 2018– one day late. With respect to Fish's other claims, he argued that they were duplicative of his negligence and breach of duty claims, and therefore, were also subject to the statute of limitations for negligence and breach of fiduciary duty.

[31] The trial court denied the amended motion to dismiss. The order was certified for interlocutory appeal and this Court accepted jurisdiction.

# Discussion and Decision

## Viable Claims Within the Statute of Limitations

[32] McElwee argues that Fish's complaint should have been dismissed by the trial court as untimely. "A motion to dismiss under Rule 12(B)(6) 'tests the legal sufficiency of the [plaintiff's] claim, not the facts supporting it.'" *Bellwether Props., LLC v. Duke Energy Ind., Inc.*, 87 N.E.3d 462, 466 (Ind. 2017) (quoting *Thornton v. State*, 43 N.E.3d 585, 587 (Ind. 2015)). "Dismissals are improper under 12(B)(6) 'unless it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief.'" *Bellwether*, 87 N.E.3d at 466 (quoting *State v. Am. Family Voices, Inc.*, 898 N.E.2d 293, 296 (Ind. 2008)). The standard of review of a 12(B)(6) dismissal is de novo, giving no deference to the trial court's decision. *Bellwether*, 87 N.E.3d at 466. The standard is the same for either a grant or a denial of a motion to dismiss based on Trial Rule 12(B)(6). *Kitchell v. Franklin*, 997 N.E.2d 1020, 1025 (Ind. 2013). When reviewing the complaint, we take the alleged facts to be true and consider the allegations in the light most favorable to the nonmoving party, drawing every reasonable inference in that party's favor. *Bellwether*, 87 N.E.3d at 466.

[33] Here, McElwee raises a statute of limitations defense. "The plaintiff 'need not anticipate a statute of limitations defense and plead matter[s] in avoidance in the complaint.'" *Id.* (quoting *Nichols v. Amax Coal Co.*, 490 N.E.2d 754, 755

(Ind. 1986)). "Thus a complaint does not fail to state a claim merely because a meritorious defense may be available." *Bellwether*, 87 N.E.3d at 466. "But a plaintiff may plead itself out of court if its complaint alleges, and thus admits, the essential elements of a defense." *Id.* "An example is where the 'complaint shows on its face that the statute of limitations has run.'" *Id.* (quoting *Nichols*, 490 N.E.2d at 755)).

[34] Indiana Code section 34-11-2-4(a)(2) (2013) provides in pertinent part that an action for injury to personal property must be commenced "within two years" after the cause of action accrues. "Under Indiana's discovery rule, a cause of action accrues, and the limitation period begins to run, when a claimant knows or in the exercise of ordinary diligence should have known of the injury." *Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009). "The determination of when a cause of action accrues is generally a question of law." *Id.* "For a cause of action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred." *Id.*

[35] McElwee called Fish's appellate counsel on February 29, 2016, to inform him that the funds had been distributed the previous Friday after the bankruptcy court had dismissed the bankruptcy petition. The complaint here was filed March 1, 2018. The question on appeal is: Did Fish's complaint assert any claims that were not barred by the applicable statute of limitations?

[36] In *Jenkins v. Yoder*, 163 Ind. App. 377, 324 N.E.2d 520 (1975), a panel of this court was presented with the question of whether a complaint was filed within the two year statute of limitations. The plaintiff was involved in an automobile collision on December 18, 1971. She filed her complaint for personal damages on December 19, 1973. December 18, 1973 was neither a Saturday, Sunday, holiday, nor a day on which the clerk's office was closed. The court noted that the statute was silent on how to calculate "within two years" and held that therefore Indiana Trial Rule 6(A) governed.

[37] Trial Rule 6(A) provides as follows:

> **Computation.** In computing any period of time prescribed or allowed by these rules, by order of the court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed is to be included unless it is:
>
> (1) a Saturday,
>
> (2) a Sunday,
>
> (3) a legal holiday as defined by state statute, or
>
> (4) a day the office in which the act is to be done is closed during regular business hours.
>
> In any event, the period runs until the end of the next day that is not a Saturday, a Sunday, a legal holiday, or a day on which the office closed. When the period of time allowed is less than seven [7] days, intermediate Saturdays, Sundays, legal holidays, and days on which the office is closed shall be excluded from the computations.

[38]    The *Yoder* court held that the two year period expired at midnight December 18, 1973, the second anniversary of the collision.

[39]    Here, the claim accrued on February 29, 2016, when Fish learned of the disbursement.  The start date in the computation of time under Indiana Trial Rule 6(A), *Yoder*, and *In Re Estate of Dunnick*, 855 N.E.2d 1087, 1091 (Ind. T.C. 2006),[5] would be March 1, 2016, and the end date would be February 28, 2018.  More specifically, the action accrued on February 29, 2016.  The start date was March 1, 2016.  The first year would end on February 28, 2017, and the second year would end on February 28, 2018.  Consequently, Fish's tort claim for negligence is barred by the statute of limitations because it was filed one day late.

[40]    Fish attempts to avoid this result by arguing that his claim accrued when the foreclosure court entered its order on May 10, 2016, determining that Fish was entitled to the funds.  However, this argument fails.

[41]    The tort was complete when McElwee transferred the funds on February 26, 2016, and accrued when Fish learned of it on February 29, 2016.  The damage to Fish that occurred on February 26, 2016, was that Fish lost the benefit of having the disputed funds held by McElwee subject to court order resolving whether Fish or Acquisitions was entitled to the funds.  Satisfaction of Fish's

_____

[5] *Dunnick* follows *Yoder* and holds that where a tax statute is silent on the computation of time, Indiana Trial Rule 6(A) governs the computation.

claim, if successful would now depend upon the financial health of Acqusitions. The subsequent determination by the foreclosure court that Fish was entitled to the funds showed subsequent, consequential damages caused by the transfer of the funds by McElwee and did not trigger the cause of action.

[42] The cause of action in tort arising from the transfer of funds by McElwee accrued on February 29, 2016 and not on May 10, 2016. The tort claim is barred by the statute of limitations.

[43] Next, we address Fish's other claims against McElwee. Fish argues that the other claims made make applicable different statutes of limitations that had not expired prior to March 1, 2018.

[44] In determining the viability of these claims as separate and independent from the tort claim, we analyze the complaint and allegations for substance and not form. The applicable statute of limitations should be ascertained by identifying the nature or substance of the cause of action and not the form of the pleadings. *Whitehouse v. Quinn*, 477 N.E.2d 270, 273 (Ind. 1985); *Shideler v. Dwyer*, 275 Ind. 270, 417 N.E.2d 281, 285 (1981).

[45] The core substantive facts for all the claims are that:

> (1) Fish and Acquisitions disputed which was entitled to the funds held by the auditor as surplus funds from the foreclosure sale;
>
> (2) McElwee represented Acquisitions;

(3) on January 20, 2015, the United States Bankruptcy Court, Southern District of Indiana, Indianapolis Division, issued an order as follows:

the Marion County Auditor is ordered to turn over the tax sale proceeds to Christopher J. McElwee, counsel for Debtor. The funds shall be made payable to '2444 Acquisitions, LLC' c/o Christopher J. McElwee, 1915 Broad Ripple Ave., Indianapolis, IN 46220. The funds shall be deposited into Debtor's counsel's trust account and held until further order of the Court. Upon issuance of payment, counsel for the Marion County Auditor shall file a 'Notice of Released Funds', after which the Marion County Auditor and Treasurer shall be dismissed from the case.

Appellants' Br. at 10;

(4) McElwee took custody of the funds pursuant to the order on January 29, 2015, and placed them in the firm trust account;

(5) the bankruptcy court terminated the bankruptcy proceeding on February 26, 2016, without any order as to the funds in McElwee's custody;

(6) that same day, McElwee transferred the funds to his client and his firm for fees owed by the client; and

(7) on February 29, 2016, McElwee notified Fish that the transfer of funds had been made.

[46]     Those facts are the basis of all claims made by Fish. There are no other substantive allegations made as to any of the other claims.

[47]     The following analysis is based on the facts as pleaded by Fish in his amended complaint:

(1) because there is no independent civil cause of action for a violation of the Indiana Rules of Professional Conduct, the fiduciary duty claim as pleaded is not viable (*see Liggett v. Young*, 877 N.E.2d 178, 183 (Ind. 2007) (there is no independent claim for civil liability for violation of the Rules of Professional Conduct);

(2) because there is no allegation of fraud by McElwee in obtaining the funds, the action based on constructive fraud as pleaded by Fish fails (*see Kalwitz v. Estate of Kalwitz*, 822 N.E.2d 274, 280 (Ind. Ct. App. 2005), *trans. denied*) (a constructive trust is a creature of equity, devised to do justice by making equitable remedies available against one who through fraud or other wrongful means acquires property of another);

(3) because Fish did not provide the funds to McElwee, the quantum meruit, quasi contract, and unjust enrichment claims fail (*see Neibert v. Perdomo*, 54 N.E.3d 1046, 1051 (Ind. Ct. App. 2016) (requires that the plaintiff provided defendant at defendant's request a measurable benefit for which he expected payment and it would be unjust to allow defendant to retain the benefits without payment); and

(4) because there is no allegation that McElwee is still in possession of the funds, the clam for money had and received as pleaded fails (*see Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 77 (Ind. Ct. App. 2010), *trans. denied*) (equitable remedy based on  implied promise against person who received money and in good conscience should not retain it).

[48] We conclude that there is but one claim viable here and that is the tort claim.

The tort claim is barred by the statute of limitations.

# Conclusion

[49] In light of the foregoing, we conclude that the trial court should have granted the motion to dismiss because the complaint was untimely filed under the statute of limitations for the tort claim, the only viable claim in the complaint, and all the other claims were based on the same substantive facts as the tort claim.

[50] Reversed and remanded with instructions to grant McElwee's motion to dismiss.

Bradford, J., concurs

Brown, J., dissents with opinion.

Christopher J. McElwee and
Monday McElwee Albright
f/k/a Monday Jones Albright,
Attorneys at Law,

*Appellants-Defendants,*

v.

Michael Fish,

*Appellee-Plaintiff.*

Court of Appeals Case No.
18A-CT-2664

**Brown, Judge, dissenting.**

I respectfully dissent and would affirm the trial court. While it is true that Fish's counsel learned from McElwee on February 29th of the tax sale surplus funds' disbursement, the judgment of foreclosure and agreed entry foreclosing the mortgages on the parcels of real estate was reinstated on March 24, 2016. The foreclosure court determined on May 9, 2016, that Fish had a substantial interest in the properties and that Acquisitions had no entitlement to the funds which had been disbursed. Under these circumstances, I would find that Fish filed his claims within the applicable statute of limitations period.